# Adams's Estate.

*Trusts and trustees—Cotrustees—Liability for default of cotrustee.*

A trustee is not an insurer of trust funds against the possibility of loss nor a surety for his cotrustee. His undertaking is personal, requiring of him good faith and reasonable diligence; and if these requirements be met, he is not liable for losses occasioned by the bad faith or

embezzlement of his cotrustee. The law requires of the trustee fidelity to the trust, and the exercise of the same measure of diligence that a man of ordinary prudence may be expected to exercise in the care of his own property under the same circumstances.

While as a general rule a trustee is not liable for trust funds received by his cotrustee, yet he is required to exercise a general superintendence and care over the trust. If he hear of any fact tending to call his attention to mismanagement or misapplication of trust funds by his cotrustee it is his duty to intervene and prevent a devastavit. His failure to do so would be a breach of trust imposing liability upon him for loss.

The joint receipt by cotrustees of trust funds imposes a joint liability. The obligation rests upon each trustee to exercise good faith and use reasonable diligence in executing the trust. If through the negligence or default of either trustee, the other trustee is permitted to dissipate the funds or convert them to his own use, he is responsible for the loss. The possession of the trust funds is joint, and it is the duty of each trustee to exercise good faith and reasonable care to protect the trust funds against his cotrustee as well as against others.

The fact that one of two trustees bestowed the same degree of care on his own interest in the trust estate and upon his own private securities as he did upon the interest of the other cestuis que trustent is no excuse for his dereliction of duty in not properly guarding the trust estate from a default on the part of his cotrustee; nor is the illness of such a trustee prior to the default of the cotrustee an excuse, where the trustee had knowledge of actions on the part of his cotrustee before his illness, which should have put him on guard against a possible misappropriation of the trust funds.

Over confidence actually reposed in a brother, is not a sufficient justification for failure to perform a duty in the administration of a trust estate.

The fact that one of two trustees informs the cestui que trust of suspicious actions of his cotrustee in regard to the trust securities, does not relieve the trustee from taking steps to prevent a repetition of such conduct and to guard the estate from any further attempt to dispoil it. If in such a case the trustee assures the cestuis que trustent that they need have no further anxiety about the estate, and that he has made proper arrangements to protect it, it is not incumbent upon the cestuis que trustent under these circumstances to employ counsel to compel the trustee to perform a duty which he himself recognized as a duty.

Two trustees of a decedent's estate, after a third trustee had been discharged, retained joint possession of the funds and distributed the income as required by the trust. The securities in which the trust funds were invested were kept in a box in a bank to which each of the trustees had access. One of the trustees knowing that his cotrustee's financial condition was bad, visited the box alone and discovered that all of the

securities had been removed. The trustee demanded the other trustee, who was his brother, to return the securities, and this was done on the following day. He did not ask why they had been removed without his knowledge or for what purpose they had been removed. One of the cestuis que trustent testified that a year or so after this transaction the trustee told her about the removal, and that he had compelled the cotrustee to return the securities, that she need have no further anxiety about it, and that he had arranged with the bank that both trustees must be present when the box was opened. It appeared that the trustees had agreed between themselves that both should be present when the box was opened, but there was no evidence to show that the bank had been made a party to the agreement, or had been served with any notice of the agreement between the trustees. Eight years after the incident of the removal of the trust funds the trustee became a helpless invalid. Just before this time, he made, with the cotrustee, a joint visit to the box, and the securities were found intact. Two years thereafter the cotrustee died suddenly, and an examination of the box made immediately thereafter showed that it was empty and that all of the securities were gone. *Held*, that the surviving trustee was liable to account for the loss of the securities.

Argued April 1, 1908. Appeals, Nos. 81 and 82, Jan. T., 1908, by Clara H. Adams and Martha A. Moran, from decree of O. C. Phila. Co., Jan. T., 1894, No. 378, dismissing exceptions to adjudication in estate of Robert Adams, deceased. Before MITCHELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Exceptions to adjudication. The orphan's court in an opinion by ASHMAN, P. J., dismissed the exceptions to the adjudication, PENROSE, J., and DALLETT, J., dissenting.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in dismissing the exceptions of Clara H. Adams and Martha A. Moran to the refusal of the court to surcharge H. Carlton Adams, surviving trustee, with securities misappropriated by his cotrustee, Robert Adams, Jr.

*Joseph De F. Junkin,* with him *Charles Sinnickson* and *Frederick C. Newbourg, Jr.,* for appellants.—The fund was awarded to H. Carlton Adams and his cotrustee, jointly, and they received it jointly, and each is responsible for the acts of the other. Such responsibility cannot be shifted by delegation of

authority : Wayman v. Jones, 4 Md. Ch. 500 ; Monell v. Mon-
ell, 5 John. Ch. (N. Y.) 283 ; Hughlett v. Hughlett, 24 Tenn.
453 ; Lewis v. Nobbs, L. R. 8 Ch. Div. 591 ; Fesmire's Est.,
134 Pa. 67 ; In re Evans, 2 Ash. 470 ; Glenn v. McKim, 3 Gill
(Md.), 366 ; Fox v. Tay, 89 Cal. 339 ; 1 Perry on Trusts, sec.
418 ; Colburn v. Grant, 181 U. S. 601 (21 Sup. Ct. Repr.
737) ; Laroe v. Douglass, 13 N. J. Eq. 308 ; Schenck v.
Schenck, 16 N. J. Eq. 174 ; Ringgold v. Ringgold, 1 Har. &
G. (Md.) 11 ; Crane v. Hearn, 26 N. J. Eq. 378 ; Smith v. Pet-
tigrew, 34 N. J. Eq. 216 ; Crane v. Howell, 35 N. J. Eq. 374 ;
In re Nills, 113 N. Y. 547 (21 N. E. Repr. 687) ; Meldon v.
Devlin, 31 N. Y. App. Div. 146 ; aff'd, 167 N. Y. 573 (60 N.
E. Repr. 1116) ; Weetjen v. Vibbard, 5 Hun (N. Y.), 265 ;
Clark v. Clark, 8 Paige (N. Y.) 152 ; McMurray v. Montgom-
ery, 32 Tenn. 374 ; Matter of Westerfield, 32 N. Y. App. Div.
324 ; s. c., 61 N. Y. App. Div. 617 ; Wilmerding v. McKesson,
103 N. Y. 329 (8 N. E. Repr. 665).

Where there has been a joint account and adjudication
thereon, and award to joint trustees to hold assets, there is a
joint possession of such assets and each trustee is severally lia-
ble therefor. And if one trustee commits a devastavit with
respect thereto, in consequence of the other having trusted
him to deal with them, then that other is liable ; for the rule
is, that he who confides, shall suffer by a breach of the trust :
Ducommun's Appeal, 17 Pa. 268 ; Hengst's App., 24 Pa. 413 ;
Lightcap's App., 95 Pa. 455 ; Pim v. Downing, 11 S. & R. 66 ;
Evans's Est., 2 Ashmead, 470 ; Donnelly's Est., 11 Pa. Dist.
Rep. 211 ; DeHaven v. Williams, 80 Pa. 480 ; Weldy's App.,
102 Pa. 454 ; Strong's Est., 160 Pa. 13.

If a trustee becomes aware of any fact tending to show that
his cotrustee is committing a breach of trust, or learns of any
fact endangering the trust, he must communicate it to his co-
trustee, or make application to the court and take active meas-
ures to protect the fund, or he will be liable : Stell's App., 10
Pa. 149 ; Wilson's App., 115 Pa. 95 ; Hilles's Est., 13 Phila.
402 ; Evans's Est., 2 Ashmead, 470 ; Hall v. Boyd, 6 Pa. 267 ;
Myer v. Myer, 187 Pa. 247 ; Fesmire's Est., 134 Pa. 67 ; Ir-
vine's Est., 203 Pa. 602 ; Beatty's Est., 214 Pa. 449.

*Thomas Leaming*, for appellee.—The finding of the fact by

the court below that H. Carlton Adams was not guilty of neg-ligence should not be reversed because of the episode of July 8, 1896, which was fully considered. H. Carlton Adams bestowed precisely the same degree of care upon his own vested interest in the estate and upon his own private securities, both of which were stolen, as he did upon his step-relative's interests. A trustee is liable for negligence alone, and the measure of his duty is that he shall exercise such care as reasonable men use in their own affairs. This the learned auditing judge and the court in banc have found as a fact was done: Fesmire's Est., 134 Pa. 67 ; Graham's Est., 218 Pa. 344 ; Jones's App., 8 W. & S. 143.

This is not a case where one of two innocent persons must suffer. All must suffer, no matter who prevails in this appeal, because all have been robbed.

OPINION BY MR. JUSTICE MESTREZAT, April 27, 1908 :

The duties and liabilities of cotrustees in Pennsylvania are well settled. A trustee is not an insurer of trust funds against the possibility of loss nor a surety for his cotrustee. His undertaking is personal, requiring of him good faith and reasonable diligence, and if these requirements be met, he is not liable for losses occasioned by the bad faith or embezzlement of his cotrustee: Fesmire's Estate, 134 Pa. 67. The law requires of the trustee fidelity to the trust, and the exercise of the same measure of diligence that a man of ordinary prudence may be expected to exercise in the care of his own property under the same circumstances: Jones's Appeal, 8 W. & S. 143. While as a general rule a trustee is not liable for trust funds received by his cotrustee, yet he is required to exercise a general superintendence and care over the trust. If he hear of any fact tending to call his attention to the mismanagement or misapplication of the trust funds by his cotrustee it is his duty to intervene and prevent a devastavit. His failure to do so would be a breach of trust imposing liability upon him for the loss. Mr. Perry in his work on trusts, section 419, says : " In all cases, if a trustee becomes aware of any fact tending to show that his cotrustee is committing a breach of trust, or if he learns any fact endangering the trust funds, he must communicate it to his cotrustees or make application

to the court, and take active measures to protect. the fund, or he will be personally liable for its loss." In effect the same doctrine is announced in Pim v. Downing, 11 S. & R. 66, where TILGHMAN, C. J., said (p. 71): "It is clear enough, that where one who does not receive the money consents that the other should misapply it, particularly where he has it in his power to secure it, he is responsible."

The joint receipt by cotrustees of trust funds imposes a joint liability. The obligation rests upon each trustee to exercise good faith and use reasonable diligence in executing the trust. If through the negligence or default of either trustee, the other trustee is permitted to dissipate the funds or convert them to his own use, he is responsible for the loss. The possession of the trust funds is joint, and it is the duty of each trustee to exercise good faith and reasonable care to protect the trust funds against his cotrustee as well as against others.

The trust funds in the Adams estate were awarded to the three trustees, sons of the testator, on June 4, 1895. They accepted the funds jointly and proceeded to administer them jointly. Within a year one of the three trustees was discharged. The other two trustees retained joint possession of the funds and distributed the income as required by the trust. The securities in which the trust funds were invested were kept in a box in the Western National Bank of Philadelphia to which each of the trustees had access. On July 8, 1896, H. Carlton Adams, the surviving and accounting trustee, knowing that his cotrustee's financial condition was bad, visited the box alone and discovered that all of the securities had been removed. This greatly troubled him and naturally aroused his suspicions. He called upon his brother, Robert Adams, Jr., the other trustee, who admitted that he had taken the securities from the box and requested Robert to return them by the following day, which he did. The trust funds in the box consisted of unregistered securities, coupon bonds, etc., which could be negotiated by either of the trustees. At the time the accounting trustee discovered the removal of the securities from the box and requested his brother to return them, it does not appear what, if anything, was said why they were removed without the knowledge of the cotrustee, or what purpose Robert had in removing them. In a subse-

quent conversation between the accounting trustee and Mrs. Moran, one of the cestuis que trustent, in 1897 or 1898, he told the latter, as she testifies, that the securities had been taken by his brother and put up as collateral; that he had compelled him to return the securities and that she need have no further anxiety about it; that he had arranged at the bank that both executors must be present when the box was opened. The testimony of the appellee's wife tended to show that the accounting trustee told Mrs. Moran that the securities had simply been placed in another box. The trustees agreed that each should have access to the box containing the securities of the estate and visit the box together, but, as the auditing judge found, there was no evidence showing the bank to have been a party to the agreement or that any notice had been served upon the bank that the trustees had made any such agreement between themselves.

In 1904 H. Carlton Adams, the accounting trustee, became an invalid and has continued such to this time. The auditor found that he was " a helpless invalid, a physical wreck, unable to lift his arm. . . . His mental faculties are weakened and his memory poor. He is unable to carry on a coherent conversation and in talking rarely takes the initiative." He also found " that, as a rule, his answers were more or less exact when, under agreement of counsel, his depositions were taken at his present place of abode."

The last joint visit of the two trustees to the box containing the securities was on February 8, 1904, and the securities were then intact. Robert Adams, Jr., one of the trustees, died suddenly on June 1, 1906, and an examination of the box on June 4, 1906, showed that it was empty and that all the securities were gone. The surviving trustee has refused to account for the securities, alleging that his brother and cotrustee, Robert Adams, Jr., removed them from the box and converted them to his own use. The accountant claims that the securities were not lost by reason of his failure to perform any duty imposed upon him as trustee, nor by any negligence or default on his part. If his position be correct, the loss of the securities does not rest upon him, and he is not under any obligation to account for them to the cestuis que trustent.

The court below refused to surcharge the accountant for

the devastavit created by the loss of the securities awarded to the trustees by the orphans' court. It was held that the conduct of the accountant did not disclose any negligence or default on his part in the management of the trust or in protecting the trust funds. The court held that the accountant's conduct in the management of the trust funds was that of a reasonably prudent man and did not show any lack of good faith or reasonable diligence in the execution of the trust.

We cannot agree with the conclusion reached by the learned court below. We think that the facts disclosed by the evidence before the auditing judge, and not controverted by the accountant himself, clearly show negligence and a lack of reasonable diligence on his part with regard to the securities of the trust estate which were converted to the use of the cotrustee. The simple question presented for solution, and the answer to which will determine the liability of the accountant, is whether the securities held by the trustees jointly were lost to the estate by reason of the failure of the accountant to exercise reasonable care to protect them. What were the duties of the accountant under the circumstances? The trust funds were awarded to and accepted by the three trustees jointly. After the discharge of one of the trustees, the trust funds were in the possession of the two remaining trustees to be jointly administered by them. The duty resting upon each trustee was that of good faith and the exercise of such care as a reasonably prudent man might be expected to exercise in the protection and management of his own property. There was a duty resting on each trustee to exercise prudence and care to insure the safety of the trust funds. In the absence of inculpatory circumstances, he was not required to regard his colleague other than honest, nor to believe that he would not honestly and properly administer the trust. At the same time, the funds being in the joint possession of the two trustees, the law required each to exercise general superintendence over them and to observe reasonable and proper precaution in protecting them against loss or embezzlement by the other trustee. Neither trustee could shut his eyes and fold his arms and permit his cotrustee to use the funds at his own pleasure and for his own purpose. If either trustee had any reason to believe that his cotrustee was not acting in good faith or might con-

vert the trust funds to his own use, it was incumbent upon him to take the necessary steps to prevent such misapplication of the funds. This was unquestionably his duty, and the failure to observe it will impose liability for any loss caused thereby.

On July 8, 1896, the accountant discovered that all of the trust securities in the box in the Western National Bank to which he and his cotrustee had access had been removed. This was done without his knowledge or consent, and, of course, without his authority. The two brothers, the trustees, had agreed that the box should only be opened in the presence of both. This was a proper precaution on the part of each of the trustees, and, of course, the agreement should have been observed. The securities, representing the whole trust estate, were in that box. Their removal, without his knowledge or consent, very naturally aroused the suspicions of the accountant. As his cotrustee was the only other person who had access to the box, the accountant knew that he had withdrawn the securities from the box. He demanded of his brother their immediate return to the box, and the demand was complied with on the following day. No explanation why they were withdrawn was demanded or given. Concede, as contended by the appellee, that they were simply taken from the box of the trust estate by the defaulting trustee and placed in the latter's own box in the Philadelphia Trust Company, yet that was an improper act on the part of the defaulting trustee, and sufficient to require the accountant to take the necessary precautions to prevent a repetition of the act and a misapplication of the trust funds by his brother. The agreement between the trustees required the box to be opened only in the presence of both. This agreement had been violated by Robert, and he had taken the trust funds and placed them in his own box in another institution to which alone he had access. There is no evidence in explanation of this conduct. When the accountant demanded the return of the securities Robert offered no explanation, and the accountant demanded none, why they were removed from the joint possession of the trustees to the possession of the one who had abstracted them. This is a singular and suggestive incident. They could not have been removed for the purposes of the trust, as its administration devolved upon both trustees. It was not made to

appear before the auditing judge that there was any necessity for the removal of the funds in the administration of the trust.   The securities were just as safe in the box in the Western National Bank as they were in the box in the Philadelphia Trust Company to which they were removed, and to which alone Robert had access.   If it was necessary to sell or dispose of them, the duty rested upon both of the trustees to act in the matter, and, therefore, they should have remained in the common box.   The securities were removed without the knowledge of the accountant, and if the purpose of Robert in removing them was a proper one, and in the interest of the trust estate, he should, and naturally would, have stated the purpose to the accountant when their return was demanded. This was not done, and we can only surmise Robert's purpose in thus violating his agreement and abstracting the securities from the common box and placing them in a trust company beyond the reach of his cotrustee.   That it was for an improper purpose, and sufficient to excite the grave suspicions of his cotrustee, we have no doubt, in view of the admitted fact that the accountant knew at that time that Robert's financial condition was bad.   No man of ordinary prudence or business sagacity would, under such circumstances, have permitted his own funds to have remained, as it were, at the mercy of another whose conduct, unexplained, showed an intention, as well as an attempt, to appropriate the funds to his own use.

We are not favorably impressed with the argument of the learned counsel for the appellee in which he attempts to minimize Robert's conduct in abstracting the securities from the common box of the trustees.   It was an act that would naturally suggest to a cotrustee or a co-owner an intention on the part of Robert to deal with the funds as his own, and to apply them to his own purposes.   It was enough to require the accountant to take the necessary steps to deprive Robert of an opportunity of misapplying the trust funds, and there has been no reasonable excuse for the accountant not taking such precautions.   It would indeed be a very dangerous precedent to hold, as suggested in argument, that the accountant was justified in not taking steps to prevent the defaulting trustee from converting the funds to his own use by the fact that Robert

was "prominent in society and in politics." There would indeed be little protection to trust funds throughout this country if such an excuse could avail to protect a trustee from the defaults or crimes of his colleague. Common knowledge derived from everyday experience tells us that such reason is frequently assigned as the cause for the default of personal representatives and trustees. At all events, it is no sufficient excuse, or one which will relieve a trustee when he has knowledge that the defaulting trustee is in financial straits, and has been guilty of an act which discloses an intention to convert the trust funds to his own use. Such act is an admonition which a cotrustee cannot ignore, and which, if he does disregard, subjects him to liability for the loss that follows. If Carlton Adams had not discovered in July, 1896, the removal of the securities from the common box and demanded their return, there might have followed shortly thereafter a devastavit of the estate. Robert's conduct on that occasion was, in the light of the circumstances, highly censurable, and could not have been in the line of his duty as a trustee. It is the first step a trustee would take if he intended to defraud the trust estate and apply the funds to his own use. After Robert had removed the securities to his own private box in the Philadelphia Trust Company he had absolute and sole control over them, and could have disposed of them and placed the proceeds in his pocket. This condition of affairs, in view of Robert's financial condition known to the accountant, was sufficient to require the latter to put the trust funds where Robert could not again abstract them and divert them from the purposes of the trust. This could readily have been done by an arrangement with the bank that both executors should be present when the box was opened. Such an agreement, as we have seen, was made between the trustees when they received the trust funds, but the bank was not a party to it, and had no right to enforce it. This simple and obvious precaution should have been taken by the accountant after he was warned of the danger of a misapplication of the funds by Robert's conduct in July, 1896. If this had been done, it is manifest that Robert could not have converted the securities to his own use without the knowledge of the accountant. It was the failure of the accountant to exercise this reasonable

precaution and thus protect the funds that gave Robert the opportunity to commit the devastavit and to deprive the cestuis que trustent of their property.

It is contended, however, that the accountant should not be surcharged with the default because he was a helpless invalid for more than two years before it occurred, and while he was unable to protect himself or the trust estate. This position is untenable and cannot be sustained. The dereliction of duty on the part of the accountant did not arise and was not confined to the time during which he was an invalid. He committed a breach of duty, imposed upon him by the acceptance of the trust, immediately after he discovered the conduct of Robert in July, 1896, by not then taking the necessary steps to prevent a recurrence of Robert's misconduct and to protect the trust funds. This breach of duty was a continuing one and began in July, 1896. The accountant, although warned not only of a possibility, but of a probability, that Robert might misapply the trust funds, took no effective measures whatever to prevent such conduct. The door was left wide ajar, and at any time within the ten years Robert could have entered and despoiled the trust estate. That he did not do so earlier, may be attributed to the fact that his necessities did not require it. It was not because the accountant had taken any steps to prevent it. If, after the discovery of Robert's misconduct in 1896, the accountant had notified the bank to require the presence of both trustees when the box was opened, there could not have been, as has been suggested, a conversion of the securities by Robert without the accountant's consent. This would have been equally true during the accountant's illness. The latter could, in case of his inability to be present, have acted by an agent; or he could have resigned, and thereby cast upon the cestuis que trustent the responsibility of protecting themselves. There is no reason given, nor, so far as the record discloses, can any reason be given, why the accountant did not appoint an agent to act in the matter when his enfeebled condition prevented his presence when the box was opened. Instead of taking this precaution to protect the trust estate, or resigning and thus admonishing the cestuis que trustent that they must protect their own interests, he continued to invite the confidence of the beneficiaries of the trust by remaining a

trustee, thereby affording Robert a still greater opportunity to plunder the estate.

It is contended that the accountant bestowed the same degree of care upon his own interest in the trust estate and upon his own private securities as he did upon the interest of the other cestuis que trustent. But that is no excuse for his dereliction of duty. It is not the standard of care required of a trustee. His conduct is gauged by that of a reasonably prudent man in the management of his own property. That Carlton Adams saw proper to rely upon the honesty of his brother in the management of the trust estate, beyond what a prudent and careful man would have done, cannot relieve him from the devastavit committed by the one who abused his imprudently bestowed confidence. It may well be that the kindness to, and confidence in, a brother account for the loss which gives rise to this litigation, but it cannot be held to be either an equitable or legal reason why a cotrustee should not account for funds misappropriated by reason of that kindness and confidence. Carlton Adams had a right to trust his brother to any extent with his own estate, but that rule does not prevail as to funds held by Carlton Adams as a trustee. The over confidence naturally reposed in a brother is not a sufficient justification for failure to perform a duty in the administration of a trust estate.

It is suggested that the accountant is relieved from surcharge by reason of the fact that he communicated to the cestuis que trustent the conduct of Robert in removing the securities from the common box of the estate. This fact, however, did not relieve the accountant from performing the duties imposed upon him by law as a trustee. He occupied a position of confidence, and a trust was reposed in him that he would protect the estate or exercise reasonable diligence and good faith in securing the trust estate to those entitled to it. The cestuis que trustent had a right to rely upon the performance of this duty, and when they were informed of Robert's misconduct in abstracting the securities from the common box, they were justified in believing that the accountant would prevent a repetition of such conduct, and take the necessary steps to guard the estate from any further attempt to despoil it. In fact, they not only had the right to assume that the accountant would take such

action to protect the estate, but he gave them the assurance, if the only testimony on the question is believed, that they " need have no further anxiety about it, that he had arranged at the bank that both executors must be present when the box was opened." It was not incumbent upon the cestuis que trustent under these circumstances to employ counsel to compel the accountant to perform a duty which he himself recognized as a duty. As the testimony shows, the accountant knew that he could effectively protect the trust funds from misapplication by Robert by an arrangement with the bank, and the cestuis que trustent had a right to rely upon his doing so.

We are unanimously of the opinion that the loss to the trust estate sustained by the devastavit of Robert Adams, Jr., trustee, was attributable to the negligence of the accountant, his cotrustee, and that, therefore, the latter should be surcharged with the amount of the devastavit. ·

The decree of the court below is reversed, and the record is remitted with directions to restate the account in accordance with this opinion.