W. R. THOMAS, E. L. JOHNSON, J. W. HAYNSWORTH, J. W. CHAMBERLIN and C. E. LONG, individually and as Members of the Board of Bond Trustees of Special Road and Bridge District Number One, of Alachua County, Florida, UNITED STATES FIDELITY & GUARANTY COMPANY, a cor-

poration, THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, a corporation, and the INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, a corporation, *Appellants,* vs. DOYLE E. CARLTON, as Governor of the State of Florida, for the use and benefit of Special Road and Bridge District Number One, of Alachua County, Florida, *Appellee.*

143 So. 780.

En Banc.

Opinion filed September 13, 1932.

650

*Baxter & Clayton,* for Appellants;

*Adkins & Richardson,* for Appellee.

PER CURIAM.—This suit was instituted by Doyle E. Carlton, as Governor, for the use and benefit of Special Road and Bridge District Number One, of Alachua County, Florida, against the members of the Board of Bond Trustees of said District, individually and as members of the Board, and also against the sureties on the bonds of said Trustees. The bill of complaint alleges that the said Special Road and Bridge District was created by Chapter 7414, Laws of Florida, 1917; that by the terms of said Chapter and Acts amendatory thereto, the Board of Bond Trustees therein provided for, was to have supervision of all roads and bridges within the district; and use of moneys paid into the general road fund or arising from any levy for general road purposes, collected within said district for construction, repairs, upkeep and maintenance of said road, and for payment of incidentals of said Board; and it was further provided that moneys received by said Board, either as proceeds of bonds or from the general road fund, should be turned over to the said Board, and that said Board should have complete and absolute control of moneys so received; that said Board of Bond Trustees received into their custody and control, large sums of money representing the proceeds from the sale of bonds, and in addition thereto, received and distributed large sums of money from the general road fund; and that "a large part of said bond fund and other large sums received by the said Defendants, after their election and qualification as members of said Board of Bond Trustees, as herein alleged, and while so acting and in part constituting a part of the proceeds derived from the sale of said bonds, and

part constituting moneys received by said defendants
from the general road fund, remain by the said defendants
* * * unaccounted for, and the said moneys last referred
to have been lost in part by the misappropriation thereof
by some one or more of said defendants and in part by the
negligence of said defendants as said Board of Bond
Trustees in handling of said funds;'' that said Chapter
7414 also contained a Section which provides as follows:

"The Board of Bond Trustees shall choose one of its
members as Chairman and the one so chosen shall
serve as Chairman until the next election or selection
of a member. That all moneys paid out by said
Trustees shall be only upon the order of the Board
duly recorded in its Minute Book, which record shall
show the negative and affirmative vote on such order.
Every voucher issued under the provisions of this
section shall be in such form as the Board shall adopt,
each voucher to be signed by the Chairman or acting
Chairman and audited and certified as being correct
by the clerk or auditor of said Board before any
depository shall pay such voucher,''

and that because of the failure of the defendants to carry
out the provisions of said Section, certain of moneys be-
longing to said District have been misappropriated and
lost; that said board set up and created and continued in
force, a proposed account known and designated as "pay-
master's account" through which, moneys in the hands of
the said board, by virtue of their office, were paid out, ex-
pended and disbursed in a manner not authorized by law
and without warrant or authority of law by means of pur-
ported vouchers issued to said proposed account; and that
because of and on account of said method of paying out
funds entrusted to said board, there has been "misap-
propriated and lost" to the said road district, large sums
of money. Complainant, in his bill prays for an account-

ing of all moneys disbursed by said bond trustee and of the administration of the funds coming into their hands, as members of said board, and that as to any balance found owing and payable by them, payment thereof be decreed by the said defendants and their sureties; that the court determine how much of the money found due upon an accounting "which has been and which remains un-accounted for as due and owing to the said district as the proceeds from sale of bonds issued by said district, and how much money, if any, is due and owing to the said district as and for general road fund moneys, including taxes collected and known as gasoline tax" and for general relief. The Board Trustees, individually, and as members of the said Board, in their answer to the bill of complaint, denied "the right and authority of Doyle E. Carlton, as Governor of the State of Florida, to bring this suit" and said that the suit "if brought at all, should be brought by the State Treasurer of the State of Florida, or by the Board of County Commissioners of Alachua County, Florida, or by both the State Treasurer and said Board of County Commissioners, or by Special Road and Bridge District Number One of Alachua County, Florida, which is a body corporate under Chapter 7414, Acts of 1917, and authorized to sue and be sued." It was further averred that the conditions of the several bonds prescribed by paragraph 4, of Chapter 7414, which provides that the bonds shall be payable to the Governor of the State of Florida and to his successors in office and conditioned for the faithful performance of their duties, and that they be approved by the Board of County Commissioners; and it is denied that the bonds are so conditioned as alleged in the bill of complaint. Further answering the bill, the said defendants, in paragraph 18 of their answer, averred:

"that the only moneys which have been lost or misappropriated or unaccounted for which came into

their hands as Bond Trustees for said district, are certain moneys which were embezzled or taken by one Henry L. Baker, who was, for a long period of years an engineer for the said Special Road and Bridge District Number One, and its pay-master. That the said Henry L. Baker has been indicted for embezzlement or larceny of said funds or of part of same, and has been arraigned and plead guilty and sentenced by this Court to a term of four years in the state penitentiary or prison farm at Raiford, Florida. And these defendants further say that Sections 10 and 13 of the said Chapter 7414, Acts of 1917, of the Legislature of the State of Florida, and other sections of said Chapter and Acts amendatory thereto, require this Board to employ some competent and experienced road engineer to keep the roads of said district in repair and to make plans and specifications covering roads and bridges in this district, and to superintend the entire execution of contracts for the construction of said roads. And these defendants further say that the said Henry L. Baker has been connected as such engineer with the said district and performing the duties required of him by the laws of this state practically all of the time since the creation of the said district, either as engineer or assistant engineer, with the exception of possibly two years. And the defendants say that the said Henry L. Baker was employed by the said district in the year 1924 as engineer, and that these defendants, to-wit: W. R. Thomas, E. L. Johnson and J. F. Haynsworth, in the selection of the said engineer, exercised every available care and caution in the employment of him; that he was born and reared in Alachua County, Florida, and came from good parentage; that in the World War he entered the United States Army and soon became a Major in said Army; and that these defendants had the utmost faith and confidence in the integrity, loyalty and patriotism of the said Henry L. Baker.''

Said defendants further, in paragraph 18a of their answer, said:

''that said district, from its organization, kept regu-

larly employed a clerk or auditor in accordance with the provisions of said Chapter 7414, and said clerk or auditor has been constantly on duty performing the duties prescribed by the district, that of checking payrolls, keeping account of all moneys belonging to said district and doing in general all clerical and auditing work. And the defendants further say that the books, records, vouchers, documents, etc., of said district were audited at regular intervals by the said clerk or auditor and were also audited at regular intervals by the auditors for the State of Florida; and that these defendants were regularly advised by the clerk or auditor of said district and by the various State auditors as said State auditors made an audit of said district that all accounts of said district were in balance, and all moneys coming into the hands of the defendants as trustees for said district duly accounted for and properly paid out. And the defendants further say that as an additional precaution and in safeguarding the interests of said district they have required of the clerk or auditor for said district bond for the faithful performance of his duties as such clerk or auditor.''

It is also averred that said Chapter 7414, Sec. 16, provides as follows:

''It is further provided that a certified copy of this section shall be filed with each depository of the funds arising from the sale of bonds or otherwise. The Bond Trustees shall require all depositories to give suitable security to protect the bonds and other funds so deposited, such security to be of the same character as now provided by law governing depositories. Said Board may employ a clerk or auditor who shall keep a minute of their proceedings, which book shall always be open to the public for inspection. Said Board shall have the power to adopt all such rules and regulations as may be necessary for dispatch of business, not inconsistent with the provisions of this Act.''

and that the rules and regulations adopted by them were not inconsistent with the Act and were necessary for dispatch of business of said district; it is denied that the

paymaster's account, through which the moneys which came into the hands of the said defendants as bond trustees, were paid out and disbursed in a manner unauthorized by law or without warrant or authority of law. It is further averred that the said paymaster's account was one of the rules and regulations prescribed by the said defendants under the provisions of the creative Act. The defendants, in paragraph 20 of their answer, averred:

"That it was necessary in the dispatch of the business of the said district to create this account and handle the moneys as hereinafter set forth. That from July of 1924, to date, large forces of men were employed and working at great distances from Gainesville, in the building, constructing, maintaining and repairing roads as provided for, and that two certain designated days each month were prescribed as pay days for the various and sundry persons employed by these defendants as Bond Trustees in the construction, repair, building, maintenance and upkeep of roads and bridges in said district. And that it was necessary, in order to expedite the business of the said district that each employee be given the amount of money he had earned from one pay day to another; and that it was dangerous and inadvisable for the engineer or anyone else connected with the said district to take large sums of money in cash over the roads in said district to where the district crews or employees were at work, and pay the same off in cash. And thereupon the defendants adopted a method of issuing a check, the form of which is attached hereto as defendant's Exhibit No. 1 and payable to the paymaster; that the said paymaster would deposit said check, or the clerk and auditor would deposit for him to paymaster's account; and that said check embraced the entire amount of payroll in payment of the employees, agents and servants of said district; and upon deposit of said check in the bank or banks in Gainesville, the said paymaster would draw separate check to each employee, agent or servant, upon the form attached hereto as Exhibit No. 2, so employed

by these defendants in the work of said district, and sign the same as paymaster. And the defendants further say that by means of these paymaster accounts the same was very much safer than the handling of cash money in the payment of its labor, servants and employees. And the defendants further say that they designated the said Henry L. Baker, the engineer for said district as paymaster for two reasons, viz: because he had a very much better knowledge of the number of employees at work for the district upon the different roads and bridges of the county and the kind and character of work each such employee performed; and second, because it was very much less expensive to the district in having the engineer perform that duty of paymaster and paying off the employees as well as performing his other duties as engineer to the district.''

It was further averred that Section 16, of said Chapter 7414, among other things provides:

''Every voucher issued under the provisions of this Section shall be in such form as the Board shall adopt, each voucher to be signed by the Chairman or acting Chairman and audited and certified as being correct by the clerk or auditor of said Board before any depository shall pay such voucher. It is further provided that a certified copy of this Section shall be filed with each depository of the funds arising from the sale of bonds or otherwise.''

and that the First National Bank of Gainesville and the Phifer State Bank were sole depositories of any and all funds of said district, which came into their hands since the time complained of in the bill, and both of these banks were fully cognizant of the provisions of law, as well as other provisions of law, ''and were charged with primary responsibility in paying out moneys of said district,'' that neither of the said banks is made a defendant in this suit; that the said Baker embezzled funds by means of checks drawn on both of the said banks, and that ''both banks well knew or better knew that such funds to be the funds of the said district, as well as these defendants

knew," that they adopted a form of payroll which was used by the said district during the time complained of, copies of which are attached to the answer, which payrolls provided a column for the signature of employees receipting for money paid them, and that by means of the vouchers issued by them and the said form of payroll no greater care or caution could be exercised by them in handling funds of the said district. It is further shown by their answer that the said Baker confessed to having embezzled a large sum of money while serving as "engineer and paymaster" of said district, and that he had conveyed certain property therein described to one Bowers, as trustee, upon account of such moneys so taken by him.

Upon motion, the court struck from the answer, among others, those parts that relate (a) to the right of the Governor to bring the suit, (b) the quoted language in paragraph 18 of the answer, (c) the quoted language in paragraph 18a of the answer, (d) to the rules and regulations and the paymaster's account, (e) the quoted language in paragraph 20 of the answer, except that part of same which begins with the words: "And thereupon adopted a method of issuing a check" and ending with the words: "agents and servants of said district," (f) the conclusion that by means of the vouchers used, no greater care or caution could be exercised by the said trustees in the handling of the funds of the district, and (g) that part of the answer dealing with the conveyance of property by Baker to a trustee upon account of moneys taken by him. Complainant also moved to strike those portions of the answer that show that all funds of the Special Road and Bridge District which came into their hands as Trustees were deposited in the First National Bank of Gainesville and the Phifer State Bank of Gainesville, and that they were paid out by vouchers drawn upon said banks, said banks being fully cognizant of the pro-

visions of said Chapter 7414, that neither of the said banks was made a defendant in this suit, notwithstanding, both are necessary and indispensable parties and that the amount embezzled can be ascertained or accounted for only by the banks being made parties defendant to this suit. This motion was denied by the Court.

An appeal was taken to this Court by the defendants, and they have assigned as error the granting of the motions to strike, except as to matter contained in said paragraph 21. The appellee filed a cross assignment of error, in which he attacks the correctness of the order denying the motion to strike said portions of paragraph 21.

The authorities are in conflict as to the liability of an officer for the loss of public money in his care and custody, due to the default, misfeasance or non-feasance of an assistant or employee.

In general, all trustees who have the custody of money are held to be exempt from liability for the loss of funds occurring without their fault or negligence, and this is so, regardless of the form or character of the bond which they may have given, or the statutes or orders of court prescribing their duties. Such trustees are held merely to that diligence and care which a prudent man ordinarily uses in his own concerns. A trustee is not an insurer. He is not absolutely bound for the result of his actions, except when he departs from the line of duty, or keeping within that line is wanting in diligence. "If he has exercised the proper care and diligence he is not responsible for mere error or mistake. Any other rule would cast upon a. trustee a burden which no prudent man would ever assume." 26 R. C. L. 1280, 1323; 28 Enc. Law, 2nd ed. 1059; Thompson vs. Hays, 11 Fed. 2d 244; Adams Est., 221 Pa. 77, 70 Atl. 436, 128 A. S. R. 727; Ferguson vs. Lowry, 54 Ala. 510, 25 A. R. 718; Winder vs. Nock (Va.), 152 S. E. 561, 3 L. R. A. (N. S.) 415; Re:

Kline, (Pa.) 124 Atl. 280, 32 A. L. R. 926; Chase vs. Lockerman (Md.), 11 Gill & Johnson 185, 35 A. D. 277; Kimball vs. Reding, 31 N. H. 352, 64 A. D. 333'; Litchfield vs. White, 7 N. Y. 438, 57 A. D. 534; Hodges vs. New England Screw Co., 1 R. I. 312, 53 A. D. 624.

Sometimes, circumstances are such that a trustee in the performance of his duties, has to have the assistance of others. In cases where the employment of agents is authorized, or it is reasonably necessary for the performance of the duties of the trust, if the trustee, while acting prudently and with reasonable care, employs an agent, who is apparently honest and properly qualified, and reasonable supervision is used over him, the trustees will not be held responsible for loss or damage caused by the negligence or dishonesty of the agent, 1 Perry on Trusts, 7th ed. 738, 682. But if the regular course of business in administering the trust does not require that the trustee part with the custody of the funds, or if any part of the trust property be put within control of persons who ought not to be entrusted with it, and a loss thereby eventually sustained, the trustee will be liable to make such loss good. 28 Enc. Law 2nd ed. 1066; 39 Cyc. 295, 304-6; Meck vs. Behrens (Wash.) 252 Pac. 91, 50 A. L. R. 207.

The general rule that a trustee in whom there is vested discretionary powers involving personal confidence, cannot delegate his powers and shift his responsibility to other persons ''does not prohibit the delegation of mere ministerial duties incidental to the execution of the trust, nor does it apply where express authority to employ agents and attorneys is given by the instrument creating the trust.'' 39 Cyc. 304; See also 1 Perry on Trusts, 7th ed. 682.

The Trustees in the case at bar are public officers (Hopkins vs. Special Road & Bridge District, etc., 73

Fla. 247, 74 Sou. 310; Stewart vs. DeLand Helen Special
R. & B. Dist., 71 Fla. 158, 71 Sou. 42; Stewart vs. Thurs-
by), each of whom has given bond for the faithful per-
formance ''of the duties of his said office.'' Being pub-
lic officers, the question that naturally arises is, does the
fact that they are such officers bind them to use diligence,
care and prudence to insure the proper disbursement and
application of moneys coming into their hands by virtue
of their office? Are they absolutely liable for the loss of
such trust funds by reason of embezzlement by a trusted
employee where the loss has occurred by reason of the
failure of the trustees to perform their duties in the
manner provided by law?

In 17 Am. and Eng. Ann. Cas. 929, the annotator says:

''The great weight of authority sustains the follow-
ing propositions with respect to liability of a public
officer and his sureties for the loss of public moneys;
Where the statute in direct terms or from its general
tenor imposes the duty to pay over public money re-
ceived and held as such and no condition limiting that
obligation is discoverable in the statute, the obliga-
tion thus imposed and assumed by the officer will be
deemed to be absolute, and the fact that the money
has been lost either through theft, robbery, bank fail-
ure, accidental fire, or other cause, without his fault,
does not constitute a defense to an action for its re-
covery. The rule of the responsibility of a bailee for
hire is not applicable to such a case. When the con-
dition of the officer's bond is that he will faithfully
discharge the duties of the office, and when the statute,
as above stated, imposes the duty of payment or ac-
countability for the money without condition, the ob-
ligors of the bond are subject to the same high degree
of responsibility. The reasons upon which these propo-
sitions rest are to be found in the unqualified terms of
the contract and in considerations of public policy.''

A great many authorities are there cited to support
this view, but in the same note it is also said that in a

few jurisdictions the rule has been adopted that neither a public officer nor his sureties are liable for the loss of public money in his custody occurring without fault or negligence on his part.

In an interesting discussion found in a monographic note in 91 A. S. R. 497 et seq., the annotator says in effect, that the numerical weight of authority supports the theory that unless the liability of an officer is expressly qualified by statute and the terms of his bond, he is an insurer of the safety of the funds intrusted to his charge, except where the loss has arisen from the act of God or by the public enemy, and that perhaps the most frequent application of this rule is to those cases in which, without any negligence on the part of the officer, money has been stolen or embezzled.

A leading case in this country, and one that has been followed by many of the courts, is the case of United States vs. Prescott, 3 How. 578, 11 L. ed. 734, held pointedly that the felonious taking and carrying away of public moneys in the custody of a receiver of public moneys, without any fault or negligence on his part, does not discharge him and his sureties, and cannot be set up as a defense to an action on his official bond. In this case, the condition of the bond was that Prescott, the obligor, has "truly and faithfully executed and discharged, and shall truly and faithfully continue to execute and discharge, all the duties of said office (of receiver of public moneys in Chicago), according to the laws of the United States; and moreover *has well, truly, and faithfully, and shall well, truly and faithfully keep safely,* without loaning or using, all the public moneys collected by him," etc. The court, in its opinion said, that the case was not one of bailment, and, consequently the law of bailment did not apply to it; that the liability of the defendant arose out of his official bond, and prin-

ciples which are founded upon public policy; that the condition of the bond was broken when the defendant, Prescott, failed to pay over the money received by him, when required to do so, and that the obligation to *keep safely* the public money was absolute, without any condition, express or implied. See also, Smythe vs. W. S. 156 U. S. 183, 47 L. Ed. 425; Mecklinberg Co. vs. Beales, 111 Va. 691, 6986, 1032; Tillinghast vs. Merrill, 151 N. Y. 135, 34 L. R. A. 678, 56 A. S. R. 612, 45 N. E. 375; Bosbyshell vs. U. S., 73 Fed. 616, 77 Fed. 944; Town of Cameron vs. Hicks, 65 W. Va. 484, 17 Ann. Cas. 926 and notes; Crane Township ex rel. vs. Secoy et al., Township Trustees (Ohio) 132 N. E. 851, 18 A. L. R. 979 and note; and cases cited in note, 1 A. L. R. 228, et seq.

On the other hand there are cases that hold that officers who have the custody of public moneys are not insurers, and are not absolutely liable, that they are in the position of bailees, and are not responsible for the loss of public moneys when free from fault or negligence. Raisler vs. Oliver, 97 Ala. 710, 38 A. S. R. 213; Barker vs. Chicago, etc., Ry. Co., 243 Ill. 482, 90 N. E. 1057, 134 A. S. R. 382, 26 L. R. A. (N. S.) 1058; Baden vs. Derby, 97 Me. 536, 94 A. S. R. 516; Richmond vs. Long, 17 Gratt. (Va.) 375, 94 A. D. 461; Sonoma County vs. Stafin, 125 Cal. 32, 57 Pac. 681; City of Livingston vs. Woods, 20 Mont. 91, 49 Pac. 437; York County vs. Watson, 15 S. C. 1, 40 A. R. 675; State vs. Copeland, 96 Tenn. 296, 54 A. S. R. 840, 34 S. W. 427; State vs. Grann, 7 Wyo. 329, 52 Pac. 533. See note, 91 Am. S. R. p. 525, 526. In the case of State vs. Grann, supra, will be found a review of the leading cases in support of both the majority and minority rules, and the reasoning of the learned Judge, who wrote the opinion, is very persuasive, but we consider the majority.

We hold with the majority rule as stated in 17 Am. & Eng. An. Cases 929, hereinabove quoted.

Section 16 of Chapter 7414 Acts of 1917, provides:

"The Board of Bond Trustees shall choose one of its members as Chairman and the one so chosen shall serve as Chairman until the next election or selection of a member. That all moneys paid out by said Trustees shall be only upon the order of the Board duly recorded in its Minute Book, which record shall show the negative and affirmative vote on such order. Every voucher issued under the provisions of this section shall be in such form as the Board shall adopt, each voucher to be signed by the Chairman or acting Chairman and audited and certified as being correct by the clerk or auditor of said Board before any depository shall pay such voucher. It is further provided that a certified copy of this section shall be filed with each depository of the funds arising from the sale of bonds or otherwise. The Bond Trustees shall require all depositories to give suitable security to protect the bond and other funds so deposited, such security to be of the same character as now provided by law governing depositories. Said Board may employ a clerk or auditor who shall keep a minute of their proceedings, which book shall always be open to the public for inspection. Said Board shall have the power to adopt all such rules and regulations as may be necessary for dispatch of business, not inconsistent with the provisions of this Act."

It was the purpose of this section of the statute to prohibit the very thing which resulted in the loss of money here complained of. It will be noted that this section contemplates that each and every indebtedness of the Board of Bond Trustees shall be paid by a separate and distinct voucher and that the payment shall be upon the order of the Board entered upon the minutes.

The pleadings here show that the Board of Bond Trustees disregarded this section of the statute and set up what they were pleased to call a paymaster's account in the depository to which account the Board would de-

posit large sums of money to be paid out not as required by statute but upon the check of the so-called paymaster.

It is no defense for the official to say that there was no provision of the statute prohibiting the adoption of the method which was adopted by the Board for the paying out of funds. The statute specifically directs the manner in which the funds should be paid out and the public official charged with the custody and control of public funds may only pay out the same in the manner provided by statute where the statute directs the manner and method of such payment.

It is contended by appellants that under the last paragraph of Section 3 of Chapter 14486, Laws of Florida, 1929, the suit should not have been brought in the name of the Governor, for the use of the said road district, but that it should have been brought in the name of the State Treasurer or the Board of County Commissioners of Alachua County, or by both the State Treasurer and said County Commissioners, or by the said Road District, or by said Road District and the State Treasurer and Board of County Commissioners. The said paragraph reads as follows:

"The Board of County Commissioners are hereby authorized to sue for and recover possession of all money due to said Boards of Bond Trustees in the same manner as such Bond Trustees could have sued for the same, except for the passage of this Act. They are also authorized to sue for and recover from said Bond Trustees or their sureties any money illegally or wrongfully disbursed or unaccounted for by them."

In so far as we are advised, the County Commissioners of Alachua County have had nothing to do with the supervision, control, construction, maintenance and repair of the roads within said Special Road District No. 1. Such matters were left entirely to the Board of Bond Trustees of said District. See Sec. 9, Chapter 7414, Laws

of Florida, Acts 1917, and Sec. 1, Chapter 8214, Laws of Florida, Acts of 1919, and subsequent Acts relating to said District. Furthermore, under the original Act creating the said District and the Act of 1919, the Board of Bond Trustees was given the custody and control of all moneys derived from the sale of bonds or raised by taxation for the payment of interest on the bonded debt and for the creation of a sinking fund, or for general road purposes, and nowhere in the Act or subsequent Acts relating to the District, do we find any supervisory or other power over the Board of Bond Trustees, the moneys coming into its hands or the duties to be performed by it, conferred upon the County Commissioners of Alachua County. "County Commissioners have only such authority as is conferred by statute. (Baden vs. Ricker, 70 Fla. 154, 69 So. 694; Stephens vs. Futch, 73 Fla. 708, 74 So. 805), and administrative duties pertaining to the affairs of a county may be conferred by law upon officers other than the County Commissioners." Thursby et al. vs. Stewart, 103 Fla. 990, 138 So. 742; Buford vs. Daniel, 87 Fla. 270, 99 So. 804; Hopkins vs. Special Road and Bridge District No. 4, Brevard County, 73 Fla. 247, 74 So. 310.

With no duties to perform in connection with, or interest in, the moneys arising from the sale of bonds of the said District, or arising from taxation for the purpose of paying interest on the said bond debt, or creating a sinking fund, or for general road purposes for the District, we are unable to see why the Board of County Commissioners should be a party complainant in this cause, unless, of course, that is mandatorily required under the provisions of Sec. 3, of said Chapter 14486.

Appellants have cited the case of Singleton et al. vs. Knott et al., 101 Fla. 1077, 133 So. 71, as supporting their contention that the County Commissioners should be

made parties to this cause. That case and this case are not analogous. In the Singleton-Knott case, the bonds ran to the Chairman of the Board of County Commissioners, and the duty devolved upon the County Commissioners and not upon the Trustees, to expend the bond moneys in the construction of the roads and bridges of the County; moneys paid in for general road purposes did not go into the hands of the Trustees to be expended by them for maintenance and repair of roads as in the case at bar. It is not contended here by the appellee that an accounting should be had of the moneys arising from taxes to pay the interest and to create a sinking fund, but of those moneys that were paid over to said Board for general road purposes. Under the allegations of the bill, such a contention would not be tenable if made.

It was not the purpose of said Chapter 14486, as shown by the title and the act, to interfere with the duty of said Board of Bond Trustees, except as it pertained to the interest and sinking fund accounts. Section 21, of the Act, makes it clear that the duties of the Trustees in the administration of the affairs and business of said District, shall continue. This Section reads as follows:

"That in the case of bond trustees, who not only handle the money and funds of such County or District, but who also govern and administer the affairs of their respective County or District, including the issuance and sale of bonds and the building and construction and maintenance of the roads and bridges thereof, then the provisions of this act shall apply only to the interest and sinking funds thereof, and such bond trustees shall continue in office and in the performance of their duties in the administration of the affairs and business of such District as may be authorized by law."

If the provisions of the Act apply only to the interest and sinking funds, and it is not contended that there has been any maladministration of such funds, then clearly

the provision of Sec. 3, of said Chapter 14486, which authorizes suit by the Board of County Commissioners for money illegally or wrongfully disbursed or unaccounted for by the said Bond Trustees, does not apply where moneys belonging to other funds under their control have been lost by reason of their negligence, if any.

The State Treasurer has no interest in the funds that are alleged to have been lost through the negligence of the Board of Bond Trustees, hence he was not a proper party complainant.

In 3 Enc. P. & Pr. 639, the authors say: "the rule was drastic at common law that only the obligee or his personal representative could sue on a bond," and in 9 C. J. 87, it is said: "It is well settled that in the absence of statute, a suit on a bond can be maintained only by the obligee named therein during his lifetime, or by his executors," etc.

In this State, we have a statute which authorizes, but does not make it obligatory for, the real party in interest to maintain a civil action (Sec. 4201, Compiled General Laws of Florida). The Governor, as obligee in the bonds in question, was the "person with whom * * * the contract was made for the benefit" of the said Road District, and was, therefore, authorized to institute the suit without joining the person or persons having a beneficial interest therein. Barry vs. Columbia Casualty Co., et al., 101 Fla. 168, 133 So. 582; Perry vs. Woodberry, 26 Fla. 84, 7 So. 483.

If an accounting should be had in this case, any funds coming into the hands of the said Board derived from property conveyed by Baker to make good in part the amount embezzled by him, should be credited to the Board whether or not it appears from the answer that Baker conveyed property to a trustee to be converted into money and the money paid over to the said Board of

Trustees. If any error was committed by the Court in striking allegations pertaining to any such conveyance, the error was harmless.

The court denied the motion of complainant to strike those parts of Section 21 of the answer that allege that the First National Bank of Gainesville and the Phifer State Bank of Gainesville were the sole depositories of the funds of the district, that said banks were cognizant of Section 16 of said Chapter 7414, Acts 1917, and were charged with primary responsibility in paying out the funds of the said District; that neither of the said banks is made a defendant in the suit; that Baker embezzled funds by means of checks on both banks and that they well knew such funds to be funds of said district; that the amount so embezzled from each of said banks is unknown to said defendants, and can be ascertained or accounted for only by said banks being made parties defendant to the suit and required to account.

Under Equity Rule 33, when the defendant, by his answer, suggests that the bill is defective for want of parties, the complainant shall be at liberty, within fourteen days after answer filed, to set the cause down for argument upon that objection only, and where the complainant fails to set down the cause and have the suggestion heard, but shall proceed to a hearing, he shall not at the hearing, if the defendant's objection shall then be allowed, be entitled, as of course, to an order for liberty to amend his bill by adding parties. If complainant desired a hearing upon defendant's objection that the bill was defective for want of parties, he should have set the cause down for argument upon the objection as provided by the rule. The record discloses that a demurrer was also interposed to those parts of said Section 21 of the answer that were sought to be stricken

by the motion that we have just referred to, but the order upon the demurrer is not before us for review.

We will say, however, that it does not appear that the First National Bank of Gainesville and the Phifer State Bank were under any contractual liability to the complainant. It may be that the said Road District has a right to follow the trust funds and ask for an accounting from the said banks for moneys paid to the paymaster on the paymaster's checks, which to their knowledge were never indorsed by the ostensible payee, but were indorsed by the paymaster in the name of the payee, and it may be the duty of the Bond Trustees to institute a suit against the banks for that purpose. We are not committing ourselves on such a proposition at this time. Because of the public nature and importance of this case, it may not be out of place for us to say that we do not now see that they have such interest in the controversy that a final decree between the parties before the court, will affect their interest, or that the controversy will be left in a situation that a final determination may be inconsistent with equity and good conscience. See Florida Ld. Rock Phos. Co. v. Anderson, 50 Fla. 501, 39 So. 392. Moreover, as a general proposition, a complainant "makes such parties to his bill as he sees fit, and cannot be compelled to add or accept others either as complainants or defendants if he is willing to stand upon his bill as framed by him and take the consequences of other persons not being made parties." See also, Brecht vs. Bur-ne Co., 91 Fla. 345, 108 So. 173; Cline vs. Cline, 101 Fla. 488, 134 So. 546.

For the reasons stated, the order appealed from is affirmed in part and reversed in part, and the cause is remanded for further proceedings not inconsistent with this opinion. Costs of this appeal shall be taxed against the appellants.

BUFORD, C.J., AND WHITFIELD, J., concur.
ELLIS AND TERRELL, J.J., agree to the conclusion.
BROWN, J., dissents.
DAVIS, J., disqualified.