624 So.2d 785 (1993)
Georgia S. MANN, Appellant,
v.
A. Hamilton COOKE, Esquire; Cooke, Hand, Carithers, Showalter & Mercier, Professional Association, now known as Hand, Carithers, Showalter & Mercier, P.A., Appellees.
No. 92-963.
District Court of Appeal of Florida, First District.
September 17, 1993.
*786 John J. Sulik and John S. Winkler, Jacksonville, for appellant.
J. Stephen O'Hara, Jr. and M. Allison Hunnicutt of Osborne, McNatt, Shaw, O'Hara, Brown & Obringer, P.A., Jacksonville, for appellee A. Hamilton Cooke.
James M. Talley and Linda S. Bols of Fisher, Rushmer, Werrenrath, Keiner, Wack & Dickson, P.A., Orlando, for appellee Cooke, Hand, Carithers, Showalter & Mercier, Professional Ass'n, now known as Hand, Carithers, Showalter & Mercier, P.A.
SMITH, Judge.
Georgia S. Mann appeals an adverse final summary judgment entered in her malpractice action against attorney A. Hamilton Cooke, and the law firm in which he practiced at the time he drew up a will and amended revocable trust agreement for her now deceased husband, Harry C. Mann. We affirm.
Mann alleges that she was a third party beneficiary of the amended revocable trust and as such, she may bring a malpractice action against appellees, even absent direct contractual privity.[1] She charges that Cooke, in drafting the amended trust agreement, breached his duty to her, as an intended third party beneficiary of the amended trust agreement, by drafting the agreement in a manner which frustrated the intent of her husband and directly resulted in diminishment of her legacy under the agreement.
The essential facts are not in dispute. In 1985, Harry C. Mann retained Cooke and the law firm and requested Cooke to prepare for him a will and a revocable trust, which was later amended. Mann was named as trustee, and a Jacksonville bank was successor trustee. Cooke prepared these instruments as well as a durable family power of attorney and a "living will." As found by the trial court:
The amended trust agreement clearly and unambiguously specifies the intent of the grantor/testator to the extent relevant to plaintiff's claims: "[T]o provide for the health, happiness, general welfare, maintenance, comfort and support of Grantor and his wife, GEORGIA S. MANN, during their lives and of Grantor's wife after Grantor's death, all in the manner hereinafter provided."
Article V of the amended trust agreement reserved to the grantor certain rights and powers "to be exercised at any time and from time to time in writing signed and acknowledged by Grantor and effective *787 when delivered to the Trustee... ." Those rights and powers included "[f]rom time to time to withdraw from the operation of this trust any part or all of the Trust Estate." The last paragraph of Article V provided: "Neither a conservator, attorney in fact, nor a guardian of the Grantor, nor any person other than Grantor may exercise any of the rights reserved to Grantor by the provisions of this Article."
Article VI of the amended trust agreement provided that, during the lifetime of the grantor, "the Trustee shall pay over to or apply for the benefit of the Grantor and the Grantor's wife, GEORGIA S. MANN, whatever part or parts or all of the income and of the principal of the trust as Grantor shall direct from time to time in writing, or, in the absence of a demand, as the Trustee, in the Trustee's absolute discretion, deems necessary or desirable to provide for the general welfare, health, happiness, and comfortable maintenance and support of the Grantor and Grantor's wife."
The durable power of attorney granted Georgia Mann, and one of her husband's daughters, the power to make withdrawals from savings accounts and "do anything regarding my estate, property and affairs that I could do myself."
From May 19, 1987 until June 16, 1987, while Harry C. Mann was hospitalized, Georgia Mann, accompanied by an attorney not associated with appellees, utilized the durable family power of attorney prepared by Cooke to withdraw in excess of $400,000 from a number of trust accounts and an account maintained in the name of Harry C. Mann, individually. The funds were transferred to her individual name. On June 29, 1987, Mann died.
After Mann's death, controversy arose over the propriety of the withdrawals made by Georgia Mann. She brought an action for declaratory judgment to have the court determine the legality of her use of the durable family power of attorney to withdraw trust funds and put them to her own personal use. The action for declaratory judgment was ultimately settled. Thereafter, she filed the instant action claiming that she was damaged by appellees' negligence because the manner in which the various documents were drawn resulted in a confusing legal situation and subsequent litigation causing her to incur legal fees and suffer other damages.
Georgia Mann argued below, and in this court, that ambiguities within the amended trust agreement resulted in frustration of Harry C. Mann's intent as reflected by the existence of the durable family power of attorney and as expressed in certain conversations he allegedly had with her. She alleges that her husband told her that she should use the durable family power of attorney to withdraw trust assets. In that vein, she contends that the existence of the durable family power of attorney renders ambiguous the language in Article V of the amended trust agreement which prohibits an attorney-in-fact from exercising any of the rights reserved to the grantor.
We find appellant's arguments unpersuasive. It is the view of this court, as it was the view of the trial court below, that Article V is clear and unambiguous in prohibiting an attorney-in-fact from exercising rights reserved to the grantor. We discern no defect in the trust agreement and no evidence demonstrating frustration of the settlor's intent. The trust unambiguously provides that the holder of a durable power of attorney cannot withdraw trust funds. The durable power of attorney does not conflict with the amended trust agreement by granting general powers inconsistent with specific restrictions expressed in the trust agreement.
Next, Georgia Mann contends that there is an ambiguity between Article V and Article VI of the amended trust agreement because Article VI does not contain a prohibition that an attorney-in-fact may not exercise rights reserved to the trustee. Therefore, she argues, the trust agreement is ambiguous as to whether she had the right, using the durable power of attorney, to exercise the trustee's discretion to pay to herself principal of the trust. Again, like the trial court, we find no ambiguity because, by law, a trustee may not delegate discretionary *788 powers. Thomas v. Carlton, 106 Fla. 648, 143 So. 780, 785 (1932).
The trust agreement does not permit the grantor/trustee (Harry C. Mann) to delegate his rights under the trust agreement  particularly his right to withdraw trust assets  to Georgia Mann. Under the trust, only Harry C. Mann, as grantor/trustee, was permitted to withdraw the funds from the trust. Reduced to its essentials, appellant's claim of malpractice rests upon the contention that she should have been given the right of withdrawal of trust assets independent of the specific provisions of the trust agreement itself, which clearly and unambiguously expressed the intent of Harry G. Mann at the time of its execution. That Harry G. Mann might have at a later time expressed or acted upon a contrary intention gives no cause for a claim of legal malpractice against his attorney.
AFFIRMED.
WOLF and MICKLE, JJ., concur.
NOTES
[1] While there was some contention by appellees that the third party intended beneficiary exception to the privity rule for bringing legal malpractice actions applied only to intended third party beneficiaries of testamentary instruments, the exception is not so limited. Greenberg v. Mahoney Adams & Criser, 614 So.2d 604 (Fla. 1st DCA), pet. for rev. denied, 624 So.2d 267 (Fla. 1993) (third party intended beneficiary exception to the privity rule for bringing legal malpractice action is not limited to will drafting).