873 So.2d 400 (2004)
MORGAN STANLEY DW INC., and Jeffrey Jon, Appellants,
v.
Janet C. HALLIDAY, Elizabeth Ann Halliday, Susan Jane Halliday, Sarah Halliday Verrier, Appellees.
No. 4D03-2875.
District Court of Appeal of Florida, Fourth District.
April 14, 2004.
Rehearing Denied June 8, 2004.
*401 Peter J. Aldrich of Peter J. Aldrich, P.A., Palm Beach Gardens, for appellants.
Randall W. Henley, West Palm Beach, for appellee Janet C. Halliday.
FARMER, C.J.
The central issue in this appeal from an order denying arbitration is whether a *402 non-signatory to an arbitration agreement is bound thereby as a third party beneficiary and must therefore arbitrate instead of suing in court. We affirm the denial and write to explain why this non-signatory is not bound to arbitrate.
Plaintiff in this lawsuit is the lifetime income beneficiary of a QTIP Trust. The Trust is managed solely by its Trusteesplaintiff has no power over the Trust assets and may not invade the principal. Some or all of the Trust assets were placed by the Trustees in an account with Morgan Stanley. The customer account agreement was executed by the Trustees and Morgan Stanley but not by plaintiff, who is not named as a party to the agreement.[1] The customer account agreement includes an arbitration clause saying that the agreement is governed by the law of New York.
Litigation began when plaintiff sued the Trustees and Morgan Stanley for mismanagement of the Trust assets. Morgan Stanley responded with a motion to compel arbitration. The motion contends that the arbitration clause in the customer account agreement requires that all controversies between the account holder and Morgan Stanley be arbitrated. Citing both the Florida and United States Arbitration Codes (but not any New York law), Morgan Stanley prayed for an order compelling arbitration.
The trial Judge denied the motion. Her order explains:
"The defendant [Morgan Stanley] contends that the plaintiff is a third party beneficiary under the customer account agreement between [Morgan Stanley] and the trustees, and the plaintiff is therefore subject to the arbitration clause. In her complaint, plaintiff does not claim rights under the customer account agreement. At most the plaintiff is an incidental beneficiary of the agreement, not a third party beneficiary which would require that the parties to the agreement (Morgan Stanley and the trustees) intended to primarily and directly benefit the plaintiff. Tartell v. Chera, 668 So.2d 1105 (Fla. 4th DCA 1996). Also See Aetna Cas. & Sur. Co. v. Jelac Corp. 505 So.2d 37 (Fla. 4th DCA 1987). A party is an intended beneficiary only if the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party. Caretta Trucking Inc. v. Cheoy Lee Shipyards Ltd., 647 So.2d 1028 (Fla. 4th DCA 1994).... Arbitration in this matter could result in extended litigation of the parties whereby the plaintiff would be litigating her claims in both arbitration and before this court, with the possibility of differing outcomes."
Morgan Stanley appeals this decision.
We find no error in the trial judge's analysis. There is nothing in the *403 motion, the parts of the customer account agreement discussed in the motion papers, or in the Trust instrument that would suggest in any way that the Trustees' decision to enter into the customer account agreement was intended to be for the primary and direct benefit of plaintiff. While it is true that the Trust assets are for the benefit of the Trust beneficiariesas to which the Trustees here are themselves the remainder beneficiaries and will take the corpus when plaintiff passes away that fact hardly yields the conclusion that the customer account agreement between the Trustees and Morgan Stanley was done primarily for plaintiff's benefit. More important, it does not indicate that the arbitration clause was done for her primary and direct benefitas one would suppose would be the rule in order to make a non-signatory to an arbitration agreement bound by somebody else's manifestation of assent.
The rules as to third party beneficiaries are these. Unless a person is a party to a contract, that person may not sueor, for that matter, be suedfor breach of that contract where the non-party has received only an incidental or consequential benefit of the contract.[2]Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277 (Fla.1985); Caretta Trucking Inc. v. Cheoy Lee Shipyards, Ltd., 647 So.2d 1028 (Fla. 4th DCA 1994). There is an exception when the non-party is specifically the intended third party beneficiary of the contract. Jacobson v. Heritage Quality Constr. Co., 604 So.2d 17 (Fla. 4th DCA 1992), rev. dismissed, 613 So.2d 5 (Fla.1993). A non-party is the specifically intended beneficiary only if the contract clearly express an intent to primarily and directly benefit the third party or a class of persons to which that party belongs. Aetna Cas. & Sur. Co. v. Jelac Corp., 505 So.2d 37 (Fla. 4th DCA 1987); Security Mut. Cas. Ins. Co. v. Pacura, 402 So.2d 1266 (Fla. 3d DCA 1981). To find the requisite intent, it must be established that the parties to the contract actually and expressly intended to benefit the third party; it is not sufficient to show only that one of the contracting parties unilaterally intended some benefit to the third party. Clark and Co. v. Dep't of Ins., 436 So.2d 1013, 1016 (Fla. 1st DCA 1983). None of these principles are satisfied in this case.
Perhaps the whole idea of trying to bind a nonparty trust beneficiary to an arbitration agreement entered into by the Trustees with a securities portfolio manager is really what is wrong here. Maybe the attempt to metamorphose plaintiff into a "third party beneficiary" of this arbitration agreement really masks an attempt to make the Trustees the agent for plaintiff when they entered into the customer account agreement. But only a moment's reflection should dispel that notion as well.
The Trustees are fiduciaries for plaintiff, not established agents. Their role is to manage the Trust assets for the benefit of those entitled to share in the Trust assets, both the income and the principal. That the Trustees may engage the services of an expert in managing Trust assets to assist them in the performance of their fiduciary responsibilities hardly makes them agents of the Trust beneficiary in order to bind her personally to their hiring of that assistance or to their purported waiver of her right of access to a court to seek redress for loss occasioned thereby.
Fiduciaries are generally not able to avoid the negligent performance of their own special responsibilities by handing *404 them off to someone else. See State ex rel. Simmons v. Harris, 119 Fla. 375, 161 So. 374, 378 (1935) ("We think that it is so elementary as not to be questioned that a trustee holding a fund subject to specific disposition cannot legally create another trusteeship and pass the fund into the hands of, and control of, that newly created trustee, so as to place the fund beyond the reach of the [beneficiary] ... entitled to the trust fund."); Thomas v. Carlton, 106 Fla. 648, 659, 143 So. 780, 785 (1932) ("Sometimes, circumstances are such that a trustee, in the performance of his duties, has to have the assistance of others. In cases where the employment of agents is authorized, or it is reasonably necessary for the performance of the duties of the trust, if the trustee, while acting prudently and with reasonable care, employs an agent, who is apparently honest and properly qualified, and reasonable supervision is used over him, the trustees will not be held responsible for loss or damage caused by the negligence or dishonesty of the agent. [c.o.] But, if the regular course of business in administering the trust does not require that the trustee part with the custody of the funds ... and a loss [is] thereby eventually sustained, the trustee will be liable to make such loss good."); Mann v. Cooke, 624 So.2d 785 (Fla. 1st DCA 1993) (by law trustee may not delegate discretionary trust powers).
Consequently, in hiring Morgan Stanley to make the daily investment decisions for the Trust assets, the law of agency did not make their Trust beneficiary bound by a hiring decision the Trustees made principally for their own convenience. Even less so, for that matter, should the Trust beneficiary be bound by an incidental stipulation (such as an arbitration clause) to which the Trustees agreed in so contracting. Clearly therefore agency also supplies no legal basis to make this arbitration agreement binding on the Trust beneficiary.
As for arbitration agreements, which involve a waiver of a person's right of access to the courts, binding a non-signatory to arbitrate under the theory of third party beneficiary is fraught with miscalculation and unfairness. For one thing, unless a manifestation of intent by the third party beneficiary to the arbitration clause is clear and indisputable, the non-party's right of access may be lost by the unilateral decision of another without knowledge or consent. For another, it is difficult to understand how, as a general matter, the usual arbitration agreement is designed specifically to benefit a non-party. In this instance, any general doubt as to benefit is displaced by its specific absence, as the trial Judge found. Arbitration in this caseinvolving the alleged mismanagement by both Morgan Stanley and the Trustees of the Trust assetswill not shorten the dispute at all because the litigation will proceed against the Trustees anyway.
In any event, agreements to arbitrate must generally manifest the intent of the person bound thereby to arbitrate. Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999). Thus, the rule is that "no party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate." 750 So.2d at 636. In light of this rule of clarity of intent, "in the absence of express language in the parties' contract mandating arbitration of such disputes," arbitration should not be compelled. 750 So.2d at 642; and cf. First Options of Chicago Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is `clea[r] and unmistakabl[e]' evidence that they did so."). Using the First Options analysis, we conclude that whether a non-party to an arbitration agreement should nevertheless *405 be bound by it even though there is no specific manifestation of assent to arbitration by the non-party is an esoteric issue, the existence of which is not likely to be sensed by most people contracting for the services of Morgan Stanley. Given the principle that a party can be forced to arbitrate only those matters one has specifically agreed to arbitrate, courts should avoid engaging in interpretation of the agreements of other parties in order to require non-parties to arbitrate. First Options, 514 U.S. at 945, 115 S.Ct. 1920.
For all we know from this bare bones motion and the above documents, the customer account agreement was more than likely primarily for the benefit of the Trustees.[3] They may have thought that in relieving themselves of making the daily investment decisions for the management of those assets they could thereby lessen their personal culpability for mismanagement. We note that the Trustees are individuals related to the decedent from whose estate the QTIP trust was established to perform the promise of a prenuptial agreement. Perhaps these family Trustees are untrained or inexperienced in managing such assets. Maybe they are simply risk averse and would prefer to throw off the liability to someone else. Certainly, nothing in the record we have been given supports the contention made by the motion to compel arbitration that as a matter of law plaintiff should be required to arbitrate.
AFFIRMED.
GUNTHER and TAYLOR, JJ., concur.
NOTES
[1] Morgan Stanley points out that the title or name of the Trust is "QTIP TR UNA Walter Halliday Jr. FBO JC Halliday...." It argues that because the designation "FBO JC Halliday" means "for the benefit of Janet C. Halliday" we should therefore approve its third party beneficiary argument. We reject this argument because the title or name of the Trust itself hardly demonstrates that the beneficiary is a direct and primary beneficiary of the present customer account agreement, much less its arbitration clause. Similarly, we also reject Morgan Stanley's companion argument that because Janet C. Halliday had a separate individual customer account agreement with an arbitration clause she is bound by the Trustee's contract. See Shearson Lehman Hutton Inc. v. Lifshutz, 595 So.2d 996 (Fla. 4th DCA 1992) (holding that fact that customer has other accounts as matter of law is insufficient to bind customer to arbitration in dispute over account on which customer had not signed).
[2] We note, as the trial judge did, that plaintiff does not claim any right under the customer account agreement in her suit.
[3] Indeed the thrust of plaintiff's mismanagement claim is that the Trust assets were placed primarily in growth investments rather than income, thereby depriving the income beneficiary of the amount she was intended to realize, and also thereby increasing the size of the Trust corpus to be given over to the Trustees after she passes away.