FILED
**United States Court of Appeals
Tenth Circuit**

**September 10, 2025**

**Christopher M. Wolpert
Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CHRISTOPHER C. FUCCI, an individual;
AMBLESIDE PARK, a New Hampshire
corporation; RICHARD HARDER, trustee
of the Richard and Susan Harder Living
Trust; SUSAN HARDER, trustee of the
Richard and Susan Harder Living Trust;
NINA D. JOHANNESSEN, trustee of the
Nina D. Johannessen Living Trust;
EUGENE SPIRITUS, trustee of the
Spiritus Revocable Trust; SUSAN
SPIRITUS, trustee of the Spiritus
Revocable Trust; JOSIE ADDAMO,
trustee of The Addamo 12/9/04 Family
Trust; BARNEY ADDAMO, trustee of
The Addamo 12/9/04 Family Trust; ROSS
R. GRECO, an individual; LINDA M.
GRECO, an individual; E&H JACKSON
LLC, a Florida Limited Liability Company;
G. SCOTT COLEMAN, an individual and
trustee of the G. Scott Coleman Trust
(12/1/04); ANSON SMITH, an individual;
GENEVIEVE SMITH, an individual;
LIEM QUANG LE, an individual;
BERNIE BROMBERG, trustee of The
Bromberg Trust; GARY R. NEIL, an
individual; AMFIL REALTY, a New York
Limited Liability Company; W. MARK
MCKOY, trustee of The W. Mark McKoy
Irrevocable Trust of 2012; BP412 LLC, an
Ohio Limited Liability Company;
THOMAS B. TARBET, an individual;
PAUL ZAMBITO, Trustee of The Joseph
and Grace Zambito Family Trust (6/26/15);
LOUIS ZAMBITO, Trustee of The Joseph
and Grace Zambito Family Trust (6/26/15);
PRUDENCE MAXON, an individual;

No. 24-4051
(D.C. No. 2:20-CV-00004-DBB-DAO)
(D. Utah)

TIMOTHY D. MAXON, an individual; MAXON-MULTILINE, a Florida Limited Liability Company; LINDA TIERNEY, trustee of The Tierney Revocable Living Trust u/t/d 8/20/18; MARTIN TIERNEY, trustee of The Tierney Revocable Living Trust u/t/d 8/20/18; THE REAL MINT, a Virginia Limited Liability Company; GERTRAUDE WINKLER, an individual; RYAN V. ANDREASEN, an individual; ALENA C. ANDREASEN, an individual; NORMAN L. MERRITT, an individual; ARMENAY FAYE MERRITT, an individual; JEAN M. BONETTI, an individual; HENRY NOAHS DUBLIN LLC, a New York Limited Liability Company; VOYNOVICH VENTURES, a New York Limited Company; JEAN PIERRE SAMSON, an individual; JENNIFER SAMSON, an individual; LAWRENCE H. TALBOT, an individual; RUSSELL M. TALBOT, an individual; CARL A. LILLMARS, JR., an individual; DONNA M. LILLMARS, an individual; CRAIG A. COUSINS, trustee of The Craig A. Cousins Trust, UTD 5/29/2014; HENRYK SARAT, an individual; MICHAEL DIGIACOMO, trustee of The Michael Digiacomo and Linda Digiacomo Revocable Trust (3/20/2001); LINDA DIGIACOMO, trustee of The Michael Digiacomo and Linda Digiacomo Revocable Trust (3/20/2001); ROCK NOAH OH LLC, an Ohio Limited Liability Company; TRACY L. ADAME, an individual; JOHN MICHAEL LALLI, III, an individual; WILLIAM G. WRIGHT, an individual; SUSAN M. WRIGHT, an individual; EC9 HOLDINGS, a Florida limited liability company; PETER BOLI, trustee of the Boli Family Trust Dated 5/13/1987; IVY S. FASKO, an individual; R&J STECK INVESTMENTS, a Utah

2

limited liability company; ALAN SESHIKI, trustee of The 2016 Seshiki Family Trust; ALMA SESHIKI, trustee of The 2016 Seshiki Family Trust; MERLE L. STEINMAN, JR., an individual; THOMAS E. FUNK, trustee of the Stephen W. Funk T/U/A Dated 3/18/2005 TBO Thomas E Funk; JUDY HENDRIX, trustee of The Hendrix Living Trust; OAK HILL MANAGEMENT, a Vermont Corporation; THEODORE E. KEITH, an individual; DENA KEITH, an individual; HARVEY A. PAUL, an individual; DONALD P. SMITH, an individual; ROSEMARY B. SMITH, an individual; LUANN PROPERTIES, a Georgia Limited Liability Company,

      Plaintiffs - Appellees,

v.

FIRST AMERICAN TITLE INSURANCE COMPANY, a Nebraska Corporation; KIRSTEN PARKIN, an individual,

      Defendants - Appellants,

and

WILLIAM BOWSER, an individual; GABRIEL MANAGEMENT, a Utah corporation; J&J CUBIT CONSTRUCTION, a Utah Corporation; BRANDON M. JENSEN, an individual; ROCKWELL DEBT FREE PROPERTIES, a Utah Corporation; SCOTT JENSEN, an individual; ROCKWELL TIC, a Utah Corporation; EDMUND & WHEELER, a New Hampshire Corporation; JOHN D. HAMRICK, an individual; CHRIS BROWN, an individual; TM 1031 EXCHANGE, a California Corporation;

3

TIM MARSHALL, an individual;
O'TOOLE ENTERPRISES, a New
Hampshire limited liability company;
MARY O'TOOLE, an individual,

    Defendants.

_____

**ORDER**

_____

Before **HARTZ**, **MORITZ**, and **ROSSMAN**, Circuit Judges.

_____

This matter is before the court on *Defendants-Appellants' Petition for Panel Rehearing and Rehearing En Banc* ("Petition").

Appellants' request for panel rehearing is granted in part to the extent of the modifications in the attached revised opinion. The court's July 22, 2025 opinion is withdrawn and replaced by the attached revised opinion, which shall be filed as of today's date. Because the panel's decision to partially grant rehearing resulted in only non-substantive changes to the opinion that do not affect the outcome of this appeal Appellants may not file a second or successive rehearing petition. *See* 10th Cir. R. 40.4.

The Petition and the attached revised opinion were transmitted to all non-recused judges of the court who are in regular active service. As no member of the panel and no judge in regular active service requested that the court be polled, Appellants' request for rehearing en banc is denied. *See* Fed. R. App. P. 40(c).

Entered for the Court,

CHRISTOPHER M. WOLPERT, Clerk

4

FILED
United States Court of Appeals
Tenth Circuit

September 10, 2025

Christopher M. Wolpert
Clerk of Court

<u>PUBLISH</u>

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
_____

CHRISTOPHER C. FUCCI, an individual;
AMBLESIDE PARK, a New Hampshire
corporation; RICHARD HARDER, trustee
of the Richard and Susan Harder Living
Trust; SUSAN HARDER, trustee of the
Richard and Susan Harder Living Trust;
NINA D. JOHANNESSEN, trustee of the
Nina D. Johannessen Living Trust;
EUGENE SPIRITUS, trustee of the
Spiritus Revocable Trust; SUSAN
SPIRITUS, trustee of the Spiritus
Revocable Trust; JOSIE ADDAMO,
trustee of The Addamo 12/9/04 Family
Trust; BARNEY ADDAMO, trustee of
The Addamo 12/9/04 Family Trust; ROSS
R. GRECO, an individual; LINDA M.
GRECO, an individual; E&H JACKSON
LLC, a Florida Limited Liability Company;
G. SCOTT COLEMAN, an individual and
trustee of the G. Scott Coleman Trust
(12/1/04); ANSON SMITH, an individual;
GENEVIEVE SMITH, an individual;
LIEM QUANG LE, an individual;
BERNIE BROMBERG, trustee of The
Bromberg Trust; GARY R. NEIL, an
individual; AMFIL REALTY, a New York
Limited Liability Company; W. MARK
MCKOY, trustee of The W. Mark McKoy
Irrevocable Trust of 2012; BP412 LLC, an
Ohio Limited Liability Company;
THOMAS B. TARBET, an individual;
PAUL ZAMBITO, Trustee of The Joseph
and Grace Zambito Family Trust (6/26/15);
LOUIS ZAMBITO, Trustee of The Joseph
and Grace Zambito Family Trust (6/26/15);

No. 24-4051

PRUDENCE MAXON, an individual; TIMOTHY D. MAXON, an individual; MAXON-MULTILINE, a Florida Limited Liability Company; LINDA TIERNEY, trustee of The Tierney Revocable Living Trust u/t/d 8/20/18; MARTIN TIERNEY, trustee of The Tierney Revocable Living Trust u/t/d 8/20/18; THE REAL MINT, a Virginia Limited Liability Company; GERTRAUDE WINKLER, an individual; RYAN V. ANDREASEN, an individual; ALENA C. ANDREASEN, an individual; NORMAN L. MERRITT, an individual; ARMENAY FAYE MERRITT, an individual; JEAN M. BONETTI, an individual; HENRY NOAHS DUBLIN LLC, a New York Limited Liability Company; VOYNOVICH VENTURES, a New York Limited Company; JEAN PIERRE SAMSON, an individual; JENNIFER SAMSON, an individual; LAWRENCE H. TALBOT, an individual; RUSSELL M. TALBOT, an individual; CARL A. LILLMARS, JR., an individual; DONNA M. LILLMARS, an individual; CRAIG A. COUSINS, trustee of The Craig A. Cousins Trust, UTD 5/29/2014; HENRYK SARAT, an individual; MICHAEL DIGIACOMO, trustee of The Michael Digiacomo and Linda Digiacomo Revocable Trust (3/20/2001); LINDA DIGIACOMO, trustee of The Michael Digiacomo and Linda Digiacomo Revocable Trust (3/20/2001); ROCK NOAH OH LLC, an Ohio Limited Liability Company; TRACY L. ADAME, an individual; JOHN MICHAEL LALLI, III, an individual; WILLIAM G. WRIGHT, an individual; SUSAN M. WRIGHT, an individual; EC9 HOLDINGS, a Florida limited liability company; PETER BOLI, trustee of the Boli Family Trust Dated 5/13/1987; IVY S. FASKO, an individual;

2

R&J STECK INVESTMENTS, a Utah limited liability company; ALAN SESHIKI, trustee of The 2016 Seshiki Family Trust; ALMA SESHIKI, trustee of The 2016 Seshiki Family Trust; MERLE L. STEINMAN, JR., an individual; THOMAS E. FUNK, trustee of the Stephen W. Funk T/U/A Dated 3/18/2005 TBO Thomas E Funk; JUDY HENDRIX, trustee of The Hendrix Living Trust; OAK HILL MANAGEMENT, a Vermont Corporation; THEODORE E. KEITH, an individual; DENA KEITH, an individual; HARVEY A. PAUL, an individual; DONALD P. SMITH, an individual; ROSEMARY B. SMITH, an individual; LUANN PROPERTIES, a Georgia Limited Liability Company,

      Plaintiffs - Appellees,

v.

FIRST AMERICAN TITLE INSURANCE COMPANY, a Nebraska Corporation; KIRSTEN PARKIN, an individual,

      Defendants - Appellants,

and

WILLIAM BOWSER, an individual; GABRIEL MANAGEMENT, a Utah corporation; J&J CUBIT CONSTRUCTION, a Utah Corporation; BRANDON M. JENSEN, an individual; ROCKWELL DEBT FREE PROPERTIES, a Utah Corporation; SCOTT JENSEN, an individual; ROCKWELL TIC, a Utah Corporation; EDMUND & WHEELER, a New Hampshire Corporation; JOHN D. HAMRICK, an individual; CHRIS

3

BROWN, an individual; TM 1031
EXCHANGE, a California Corporation;
TIM MARSHALL, an individual;
O'TOOLE ENTERPRISES, a New
Hampshire limited liability company;
MARY O'TOOLE, an individual,

Defendants.

_____

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:20-CV-00004-DBB-DAO)**

_____

David W. Tufts of Dentons Durham Jones Pinegar, P.C., Salt Lake City, Utah (Douglas W. Henkin of Dentons US LLP, New York, New York, and J. Tayler Fox of Dentons Durham Jones Pinegar, P.C., Salt Lake City, Utah, with him on the briefs), for Defendants-Appellants.

Reid W. Lambert of Strong & Hanni, P.C., Salt Lake City, Utah, for Plaintiffs-Appellees.

_____

Before **HARTZ**, **MORITZ**, and **ROSSMAN**, Circuit Judges.

_____

**HARTZ**, Circuit Judge.

_____

Christopher Fucci and more than 50 other individuals and family entities (Plaintiffs) purchased interests in real-estate development projects in Florida and Ohio. Each sale was memorialized in a Purchase and Sale Agreement (PSA) containing an arbitration clause. But none of the projects were completed, and Plaintiffs sued First American Title Insurance Company (First American) and its employee Kirsten Parkin (together the FA Defendants), who acted as the escrow agent in the closing of each sale. Although they were not signatories to the PSAs, the

4

FA Defendants moved to compel arbitration based on the arbitration clauses in the agreements. The district court denied the motion.

On appeal the FA Defendants argue that they may enforce the arbitration clauses in the PSAs because: (1) they were parties to the PSAs; (2) they were third-party beneficiaries of the PSAs; (3) they were agents of a party to the PSAs; and (4) Plaintiffs, who were signatories to the PSAs, are equitably estopped from avoiding arbitration of disputes relating to those agreements. Exercising jurisdiction under 9 U.S.C. § 16(a)(1)(C), we affirm.

## I.    BACKGROUND

Plaintiffs purchased tenant-in-common interests in event centers to be constructed in Florida and Ohio from Rockwell Debt Free Properties, Inc. and its affiliates (Rockwell). The PSA for each sale stated the purchase price, the interest acquired, and other relevant terms. The PSAs contained nearly identical arbitration clauses—the only difference being the forum state for arbitration proceedings (either Florida or Ohio)—which stated as follows:

> **Arbitration.** *Any dispute between the parties will be submitted to binding arbitration* according to the Commercial Rules of the American Arbitration Association . . . . Except for actions relating to the payment of money for services rendered, an action under this Agreement must be filed within 90 days of the date of closing pursuant to this Agreement. Arbitration will be conducted in [Florida or Ohio (depending on the contract)], before a single arbitrator. . . . Judgment upon the award may be entered in any court having jurisdiction.

Aplt. App., Vol. I at 221 (emphasis added). Each PSA designated First American as the escrow agent for the sale, and its employee Parkin served as the individual

5

escrow agent for the transaction. There was no written escrow agreement. First American did not sign the PSAs; the only signatories to the agreements were the buyers and Rockwell. A number of the buyers used proceeds from sales of their interests in other commercial real estate to purchase their interests in the event centers so that they could take advantage of the tax benefits of a "like-kind" or "1031" exchange under Section 1031 of the Internal Revenue Code, 26 U.S.C. § 1031.

No event venues were completed, and the development projects failed. Attempting to recover their investments, Plaintiffs sued Rockwell and the FA Defendants in the United States District Court for the District of Utah in January 2020. Rockwell filed for bankruptcy that September. An amended complaint was filed in August 2021. It alleged that the FA Defendants promised that Plaintiffs' purchase money would be held in escrow by First American and that disbursements would be made to Rockwell only for acquisitions of land and for construction of the event centers. Rather than holding the funds in escrow as provided, however, the FA Defendants disbursed all the money to Rockwell almost immediately after closing, without regard to the state of construction. After taking a percentage of the proceeds as a commission, Rockwell paid the remainder of the funds to a company called Noah Corporation, which used this money to pay its executives, obligations to prior investors, and operating expenses. Plaintiffs asserted causes of action against the FA Defendants for (1) breach of fiduciary duty; (2) aiding and abetting tortious conduct;

6

(3) conspiracy to engage in tortious conduct; (4) materially aiding state-law securities fraud; (5) unjust enrichment; and (6) abuse of vulnerable adults.

In September 2021 the FA Defendants filed a motion to compel arbitration based on the arbitration clauses in the PSAs. A month later, Rockwell's bankruptcy trustee expressly waived the arbitration provision in each PSA to which at least one of the Plaintiffs was a party when the trustee and Plaintiffs' lawyer agreed by letter to delete the arbitration clauses in the PSAs.. Then, perhaps without having been notified of the letter agreement, the district court in December 2021 denied the FA Defendants' motion to compel arbitration without prejudice, opting to wait for this court's ruling in *DiTucci v. First American Title Insurance Co.*, No. 21-4120, 2023 WL 382923 (10th Cir. Jan. 25, 2023), a related case involving similar parties and issues in which the FA Defendants appealed the denial of a motion to compel arbitration.

After this court affirmed the district court's decision in *DiTucci*, the FA Defendants filed a renewed motion to compel arbitration. A magistrate judge denied the renewed motion. The FA Defendants then filed objections to the magistrate judge's order, but the district court overruled the objections and adopted the order. *See Fucci v. Bowser*, No. 2:20-cv-00004-DBB-DAO, 2024 WL 2076855, at *18 (D. Utah May 9, 2024). The FA Defendants appeal.[1] We affirm the district court.

---

[1] Plaintiffs contend that the FA Defendants waived three of their arguments discussed below—party-status, third-party beneficiary, and agency—because they did not raise them until their supplemental brief in support of their renewed motion to compel arbitration. But those contentions are belied by the record. The FA Defendants raised each of these arguments in their initial brief supporting their

7

## II.    DISCUSSION

The FA Defendants assert a variety of legal theories why they may compel Plaintiffs—with whom they had no agreement to arbitrate—to bring their claims in arbitration. We reject each argument.

### A.    Legal Standards

"We review de novo a district court's decision to grant or deny a motion to compel arbitration," accepting the district court's findings of fact unless they are clearly erroneous. *Brock v. Flowers Foods, Inc.*, 121 F.4th 753, 759 (10th Cir. 2024).

Although the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (FAA), "strongly favors enforcement of agreements to arbitrate, a party cannot be required to submit to arbitration any dispute which it has not agreed so to submit." *Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 777 (10th Cir. 2010) (brackets and internal quotation marks omitted). If there is an enforceable agreement, it is then necessary to determine "who is bound by the agreement and whether the agreement covers a particular controversy." *Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 832 (10th Cir. 2023) (citation and internal quotation marks omitted).

The parties agree that this court can decide the validity and scope of the arbitration provisions in the PSAs. We resolve these questions by applying state contract law. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009);

---

renewed motion to compel arbitration. In any event, we rule in favor of Plaintiffs on each argument.

8

*Reeves v. Enter. Prods. Partners, LP*, 17 F.4th 1008, 1011 (10th Cir. 2021). The parties also agree that the PSAs for the Ohio properties are governed by Ohio law, while the PSAs for the Florida property are governed by Florida law.

Accordingly, our task is to predict whether the high court in each state would permit the FA Defendants, as nonsignatories to the PSAs, to enforce the arbitration clauses in those agreements. *See Reeves*, 17 F.4th at 1012 ("If the state's high court has not explicitly decided the issue," we "must attempt to predict" what it would do. (internal quotation marks omitted)). "In making our prediction, we may consider a number of authorities, including analogous decisions by the state Supreme Court, the decisions of the lower courts in the state, the decisions of the federal courts and of other state courts, and the general weight and trend of authority." *Bertels v. Farm Bureau Prop. & Cas. Ins. Co.*, 123 F.4th 1068, 1078 (10th Cir. 2024) (internal quotation marks omitted).

### B.    Party to the PSA

The PSAs provided that "[a]ny dispute between *the parties* will be submitted to binding arbitration." Aplt. App., Vol. I at 221 (emphasis added). The FA Defendants argue that they were "parties" to the PSAs and thus they are entitled to compel arbitration.[2] Aplt. Br. at 19.  But neither of them was a signatory nor was either referred to as a party in the document.

---

[2] Plaintiffs appear to argue that the FA Defendants are judicially estopped from contending that they were parties to the agreements on appeal because they claimed the opposite at one point below. In their motion to dismiss Plaintiffs' original complaint, the FA Defendants asserted that "[a]s a matter of law, [the PSAs] do not

The plain language of the PSAs makes clear that the only parties to the agreements were Plaintiffs and Rockwell. The first sentence of each PSA states that the agreement is made "by and between" Rockwell and the buyers, without mention of any other parties. Aplt. App., Vol. I at 218. And the signature block states that "the parties have set their hands" to the agreement and lists Rockwell and the buyers as the only signatories. *Id.* at 224. We must conclude that the FA Defendants were not parties to the PSAs and were not parties within the meaning of the arbitration clauses. *See Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013) ("The intent of the parties to a contract, as manifested in the *plain language* of the arbitration provision and contract itself, determines whether a dispute is subject to arbitration." (emphasis added)); *Taylor v. Ernst & Young, L.L.P.*, 958 N.E.2d 1203,

create fiduciary duties from First American to any Plaintiffs" because "First American is *not a party* to any [PSA]." Aplee. Supp. App. at 70 (emphasis added). Although this statement is inconsistent with the FA Defendants' position on appeal, judicial estoppel does not apply when the earlier position failed to persuade the court. *See Stender v. Archstone-Smith Operating Tr.*, 910 F.3d 1107, 1115 (10th Cir. 2018) (In deciding whether to find judicial estoppel, we consider "[1] whether a party is now asserting a position that is clearly inconsistent with its prior position, [2] *whether that party successfully convinced a court to accept the earlier position*, and [3] whether it would be unfair to allow that party to change its position." (bullet points and internal quotation marks omitted; emphasis added)); *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001) ("[C]ourts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent determinations." (citation and internal quotation marks omitted)). The FA Defendants did not persuade the district court to accept their previous position—the motion to dismiss was denied as moot. We therefore decline to apply judicial estoppel.

10

1210 (Ohio 2011) ("[C]ourts must not override the clear intent of the parties, or reach a result inconsistent with the *plain text* of the contract, simply because the policy favoring arbitration is implicated." (internal quotation marks omitted and emphasis added)).

This conclusion is in accord with traditional contract doctrine. The parties to a contract are the "promisor" and "promisee." Restatement (Second) of Contracts § 9 at 26 (A.L.I. 1981) ("There must be at least two parties to a contract, a promisor and a promisee."); *see id.* § 2 cmt. g. at 12 ("The promisor and promisee are the 'parties' to a promise; a third person who will benefit from performance is a 'beneficiary.'"). The promisor is "[t]he person manifesting the intention [to act or refrain from acting in a specified way]" and the promisee is "[t]he person to whom the manifestation is addressed." *Id.* § 2 at 8–9. Under the PSAs, Rockwell promised to convey real-estate interests to the buyers, who, in exchange, promised to pay Rockwell for those interests. The FA Defendants, on the other hand, did not promise anything to anyone under the PSAs. To be sure, the PSAs name First American as the escrow agent for each transaction.[3] But even though the FA Defendants could benefit from the contracts, no promises were *addressed* to them.

---

[3] The only provisions in the PSAs that mention First American state in full:

**2.2**    The balance of the purchase price shall be wired, or otherwise transferred, to *First American Title Company* within twenty-four hours of closing.

**3.2**    Buyer hereby acknowledges and agrees that Accommodator [a named intermediary to facilitate the 1031 exchange] shall

11

The FA Defendants cite several cases under Florida and Ohio law that purportedly show that they "became parties" to the agreements "[b]y agreeing to render the services set forth in the PSAs." Aplt. Br. at 19. But none of these cases explains how the FA Defendants could have somehow become parties to the PSAs. They all dealt with whether an escrow agent who was not a party to the agreement could still be held liable by the transacting parties for breach of an implied escrow agreement or breach of fiduciary duty. *See United Am. Bank of Cent. Fla., Inc. v. Seligman*, 599 So. 2d 1014, 1016 (Fla. Dist. Ct. App. 1992); *Armbruster v. Alvin*, 437 So. 2d 725, 727 (Fla. Dist. Ct. App. 1983); *Hoffman v. Atlas Title Sols., Ltd.*, 214

---

> periodically transfer the 1031 Funds to *First American Title Company*, in one or more installments, which funds shall be applied toward either (i) the purchase of an undivided interest in the Property or (ii) the construction of the improvements on the Property on a reimbursement basis (i.e., the 1031 Funds will be used to reimburse Seller for costs it has incurred in constructing the improvements on the Property). Seller shall periodically provide statements to *First American Title Company* detailing the construction costs that Seller has incurred and seeking reimbursement of such costs via transfer(s) of 1031 Funds.
>
> **3.4** Closing shall occur once all of the 1031 Funds have been transferred by the Accommodator to *First American Title Company* pursuant to Section 3.2; provided, however, that in the event all of the 1031 Funds have not been transferred by the date that is 180 days after Buyer relinquished the property to be part of the 1031 Exchange (the "1031 Deadline"), all remaining funds shall be transferred and Closing shall occur no later than the 1031   Deadline.
>
> **3.5** Buyer hereby assigns to Accommodator all of its rights under this Agreement and hereby instructs Accommodator to transfer 1031 Funds to *First American Title Company* as described in Section 3.2 above.

Aplt. App., Vol. I at 218–19 (emphasis added).

N.E.3d 1271, 1279–81 (Ohio Ct. App. 2023); and *Waffen v. Summers*, No. OT-08-034, 2009 WL 1741731, at *6 (Ohio Ct. App. June 19, 2009). They did *not* address whether an escrow agent could become a party to the transacting parties' underlying purchase agreement by providing escrow services to those parties. The issue in dispute was the existence of a contract regarding escrow services between the escrow agent and the two parties to the sale, not whether the escrow agent was a party to the sale contract. *See, e.g., Seligman*, 599 So. 2d at 1016 (distinguishing between the "primary agreement . . . between the principal parties who have or claim an interest in the escrowed funds" and "the agency agreement between the main parties as principals and the escrow agent").

The FA Defendants also refer us to *Conseal International Inc. v. Neogen Corp.*, 488 F. Supp. 3d 1257, 1269–70 (S.D. Fla. 2020), and *Hunter v. Shield*, 550 F. Supp. 3d 500, 519 n.6 (S.D. Ohio 2021), for the proposition that "a non-signatory is deemed a party to a contract if the non-signatory assents to its obligations under the contract." Aplt. Br. at 20. But these cases are likewise unhelpful. *Conseal* only recognized that a nonsignatory who receives rights under an agreement by assignment may be held liable for breaching its contractual obligations under that agreement. *See* 488 F. Supp. 3d at 1269–72. No assignment occurred in this case. And *Hunter* simply contained a footnote stating the unremarkable proposition that a signature is not necessary to form a valid contract where the parties manifest an intent to be bound by an agreement. *See* 550 F. Supp. 3d at 519 n.6. The FA

13

Defendants submit no evidence of any offer, acceptance, or mutual assent that could bind them to the arbitration clause in the PSAs.

In short, the FA Defendants were not parties to any PSA. If they had declined to act as escrow agent in any of the sales transactions, they would not have breached the PSA. Any contractual obligation they may have had in the escrow transaction could have arisen only from their later agreement to act in that capacity. In particular, no PSA reflected an agreement by the FA Defendants to arbitrate any disputes they had with the signatories to the PSA. The FA Defendants may not compel arbitration under the theory that they were parties to the PSAs.

### C.    Third-Party Beneficiary

The FA Defendants also contend that they may enforce the arbitration clause as third-party beneficiaries of the PSAs.[4] We cannot agree.

"Performance of a contract will often benefit a third person." Restatement (Second) of Contracts § 302 cmt. e. at 443. But no duty is owed to the third person unless he is an "intended beneficiary." *Id.* "[A] beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of

---

[4] Plaintiffs say that the FA Defendants are judicially estopped from arguing they are third-party beneficiaries of the PSAs because they took a "conflicting position" earlier in the lawsuit. Aplee. Br. at 15. But Plaintiffs fail to identify any conflicting or "clearly inconsistent" prior position. *Stender*, 910 F.3d at 1115 (internal quotation marks omitted). Their judicial-estoppel argument therefore fails. *See Cruz v. City of Deming*, 138 F.4th 1257, 1265 n.2 (10th Cir. 2025).

the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Id.* § 302(1) at 439–40.[5] An intended beneficiary "is treated no differently with respect to the enforcement of the promise than a party in traditional privity of contract." 13 Williston on Contracts § 37:1 at 21–23 (4th ed. 2024).

To support their argument, the FA Defendants rely on the opinion of the Utah Court of Appeals in *First American Title Insurance Co. v. Barron*, 540 P.3d 623, 628 (Utah Ct. App. 2023), a related case which involved similar facts and parties. There the court held that First American could compel arbitration as third-party beneficiaries of the PSAs under Colorado law because "the parties to the PSAs manifested an intent to confer a specific legal right on First American." *Id.* The court reasoned that the agreements conferred more than an incidental benefit on First American because they "expressly required the parties to use First American" as their escrow agent, and the contracts "placed First American in a key role in the transactions." *Id.*

We question whether that opinion correctly applied Colorado law. It quotes a Colorado appellate decision stating that "'a non-party, such as a third-party beneficiary, may fall within the scope of an arbitration agreement and compel its enforcement if that is the intent of the parties.'" *Id.* (quoting *Vallagio at Inverness*

---

[5] The Restatement approach is not without its critics. *See* Melvin Aron Eisenberg, *Third-Party Beneficiaries*, 92 Colum. L. Rev. 1358 (1992).

*Residential Condo. Ass'n v. Metro. Homes, Inc.*, 412 P.3d 709, 718 (Colo. App. 2015)). But there is a great difference between intending that First American perform escrow services and intending that it come under the arbitration provision. We see no evidence of the latter intent.

In any event, we must apply Florida and Ohio law, and we do not think the laws of those States support the FA Defendants. Under Florida law, "[a] third party may sue under a contract as an intended third party beneficiary only if the parties express, or the contract clearly expresses, the intention to *primarily* and *directly* benefit the third party." *Arch Ins. Co. v. Kubicki Draper, LLP*, 318 So. 3d 1249, 1254 n.5 (Fla. 2021) (internal quotation marks omitted and emphasis added). As previously discussed, the PSAs mention First American only to identify it as the escrow agent that will receive funds from the buyer and to describe the procedures the parties must follow in closing the transaction.[6] The sole purpose of the PSAs was to consummate Plaintiffs' purchases of interests in real-estate development projects from Rockwell. Thus, it can hardly be said that Plaintiffs and Rockwell intended to primarily and directly benefit the FA Defendants by entering into the PSAs. *See Morgan Stanley DW Inc. v. Halliday*, 873 So. 2d 400, 402–03 (Fla. Dist. Ct. App. 2004) (nonsignatory trust beneficiary could not be compelled to arbitrate as third-party beneficiary under agreement between trustees and brokerage firm because the agreement was not "done primarily for [the trust beneficiary's] benefit," nor was

---

[6] *See supra* n.3 (quoting all PSA provisions mentioning First American).

16

there anything to "indicate that the *arbitration clause* was done for [the trust beneficiary's] primary and direct benefit—as one would suppose would be the rule in order to make a non-signatory to an arbitration agreement bound by somebody else's manifestation of assent"); *Peters v. The Keyes Co.*, 402 F. App'x 448, 451 (11th Cir. 2010) (per curiam) (applying Florida law and citing *Morgan Stanley*, 873 So. 2d at 403, in holding that a nonsignatory escrow agent was not a third-party beneficiary of the transacting parties' real-estate purchase agreement (which specifically identified the escrow agent) and therefore could not enforce the arbitration clause in that agreement because "[t]he agreement contained nothing to suggest that [the parties] intended to benefit [the escrow agent], much less that the arbitration clause was done for [the escrow agent's] primary and direct benefit" (emphasis and internal quotation marks omitted)).

Likewise, under Ohio law, "[f]or a person to be an intended third-party beneficiary, the contract must have been entered into *directly* or *primarily* for the benefit of that person. An incidental or indirect benefit to the third party is not sufficient." *Caruso v. Nat'l City Mortg. Co.*, 931 N.E.2d 1167, 1171–72 (Ohio Ct. App. 2010) (emphasis added and footnote omitted); *see Huff v. FirstEnergy Corp.*, 957 N.E.2d 3, 7 (Ohio 2011) ("[T]here must be evidence that the contract was intended to *directly benefit* that third party." (emphasis added)). The fact that the PSAs would benefit the FA Defendants by supplying them with escrow work was "merely incidental" to the intent of Rockwell and the buyers in entering into the agreements. *Global Pac., LLC v. Kirkpatrick*, 88 N.E.3d 431, 433, 436 (Ohio. Ct.

17

App. 2017) (nonsignatory franchisor could not be compelled to arbitrate as third-party beneficiary under agreement between two businesses to operate a franchise in Ohio because the agreement "makes clear that it was entered into by the [businesses] for those two parties' benefits in attempting to run a successful . . . franchise," and "[t]he fact that [the franchisor] would benefit in some way by there being a successful . . . franchise in Ohio would be merely incidental"); *see West v. Household Life Ins. Co.*, 867 N.E.2d 868, 870, 873–74 (Ohio Ct. App. 2007) (nonsignatory provider of credit-disability insurance could not compel signatory policyholder to arbitrate under arbitration provision in loan agreement between policyholder and lender because there was "no evidence in the [loan agreement] that the parties [the borrower and lender] intended to confer any benefit on . . . [the] third-party insurer").

We conclude that the FA Defendants cannot compel arbitration under a third-party-beneficiary theory.

### D.    Agency

The FA Defendants also argue that they may compel arbitration because they acted as agents of Rockwell.[7] But even if they were agents, they could not invoke the

---

[7] Once again, Plaintiffs suggest that the FA Defendants are judicially estopped from arguing that they were agents of Rockwell. Another set of defendants in this lawsuit implied in their motion to dismiss that the FA Defendants acted as agents assisting in the sale of tenant-in-common interests to Plaintiffs. In response, the FA Defendants filed a notice stating that the agency allegation was "incorrect." Aplee. Supp. App. at 106. The FA Defendants explained that "[t]he Complaint never alleges that First American acted as an agent that assisted in the sale of [tenant-in-common] interests"; instead, "First American acted as *escrow* agent and title insurer for the Rockwell Defendants *and* Plaintiffs, which was separate from the actual [tenant-in-common] interest sales." *Id.* But as before, *see supra* n.2, we reject Plaintiffs'

18

arbitration clause because it was waived by their principal. The waiver occurred during Rockwell's bankruptcy proceedings through an October 2021 letter signed by Plaintiffs' counsel and the trustee of Rockwell's bankruptcy estate that contained the subject line: "Waiver of Arbitration." Aplt. App., Vol. IV at 789. The trustee expressly waived the arbitration clause contained in each PSA at issue "on behalf of the Debtor entities, the estate, and all *agents*, assigns, employees, and representatives thereof." *Id.* (emphasis added). The letter further stated that "to the extent that a modification of the PSA is required to be in writing, your signature below *confirms this waiver and the deletion of the arbitration provision from each PSA*." *Id.* (emphasis added); *see Morrell v. Wayne Frier Manufactured Home Ctr.*, 834 So. 2d 395, 397 (Fla. Dist. Ct. App. 2003) ("A contractual right to arbitrate a dispute may be waived."); *Griffith v. Linton*, 721 N.E.2d 146, 149 (Ohio Ct. App. 1998) ("An arbitration provision in a contract may be waived either by express words or by necessary implication.").

The FA Defendants attack the efficacy of the waiver on multiple fronts.[8] First, they point out that the Rockwell bankruptcy trustee waived the arbitration clause one

---

judicial-estoppel argument because there is nothing in the record to suggest that the FA Defendants "successfully convinced a court to accept the earlier position." *Stender*, 910 F.3d at 1115.

[8] It is questionable whether the FA Defendants' arguments against the waiver are properly preserved. The magistrate judge recommended that the district court rule that Rockwell's right to arbitrate had been waived. The district court noted that the FA Defendants' objections to the magistrate judge's finding that Rockwell waived its arbitration rights "lack[ed] clarity" and were not "sufficiently specific." Aplt. App., Vol. IV at 1025; *see United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060

19

month *after* the FA Defendants initially moved to compel arbitration. They say that Rockwell could not waive the FA Defendants' rights after they had moved for arbitration. This argument does not survive analysis.

To say that the FA Defendants had the right, in their capacity as agents, to demand arbitration of their dispute is to say that they were acting on behalf of their principals in attempting to have the dispute arbitrated. But an agent cannot do what its principal is not permitted to do. Rockwell lost its right to demand arbitration when it waived that right. So the FA Defendants, at least in their capacity as agents of Rockwell, also lost that right. *Cf.* Restatement (Third) of Agency § 3.07(4) at 217 (A.L.I. 2006) ("When a principal that is not an individual ceases to exist or commences a process that will lead to cessation of its existence or *when its powers are suspended*, the agent's actual authority terminates except as provided by law." (emphasis added)); *Laurel Baye Healthcare of Lake Lanier, Inc. v. NLRB*, 564 F.3d 469, 473 (D.C. Cir. 2009) ("As the Restatement (Third) of Agency sets forth, an agent's delegated authority terminates when the powers belonging to the entity that bestowed the authority are suspended." Thus, "[i]f the Board has no authority, it follows that [its] committee has none."). When Rockwell signed the waiver letter on October 20, 2021, it relinquished its power to demand arbitration of disputes under

---

(10th Cir. 1996) ("[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for . . . appellate review."). Nevertheless, the court proceeded to address the merits of the objections. Because it did so, we may review the FA Defendants' arguments on appeal. *See VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151, 1169 (10th Cir. 2021).

the PSAs. This also terminated any authority that the FA Defendants may have possessed to enforce the arbitration provision.

Moreover, an agent's actual authority to do something is terminated when the principal revokes it. *See* Restatement (Third) of Agency § 3.10(1) at 231–32 ("[A]n agent's actual authority terminates if . . . the principal revokes the agent's actual authority by a manifestation to the agent. A revocation . . . is effective when the other party has notice of it."). Thus, any authority that the FA Defendants may have had to enforce the arbitration provision was terminated after Rockwell revoked it by executing the waiver and the FA Defendants received notice of that waiver. (On October 20, 2021, the day the waiver was executed, Plaintiffs filed their opposition brief to the FA Defendants' initial motion to compel arbitration, and their brief attached the freshly signed waiver letter as an exhibit.)

In any event, an agent is not acting on behalf of its principal when it ignores what it knows the principal wishes it to do. *See id.* § 2.01 at 80 ("An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act."); Restatement (Second) of Agency § 33 cmt. a. at 116 (A.L.I. 1958) ("[I]n no event must [the agent] act contrary to what he reasonably believes the principal desires him to do."). The FA Defendants claim to have been acting as agents of Rockwell. And Rockwell, which waived any right to demand arbitration, clearly did not want the dispute to be arbitrated. Insofar as they were acting as agents of Rockwell, the FA

21

Defendants therefore were bound to halt their attempt to compel arbitration when Rockwell waived the arbitration provision.

Perhaps Rockwell's opposition to arbitration was not already apparent to the FA Defendants when they originally moved to compel arbitration, but the motion accomplished nothing irreversible. In particular, the district court had not acted on the motion before Rockwell waived the arbitration clause. We see no reason why the FA Defendants were compelled, or even authorized, to continue to pursue a demand for arbitration as Rockwell's agents once they were informed that Rockwell had waived the right to arbitrate.

For their second attack on the waiver, the FA Defendants contend that the district court improperly placed the burden on them to disprove waiver rather than requiring Plaintiffs to prove waiver. But the district court did not place the initial burden of persuasion on the FA Defendants. The burden shifted once the magistrate judge had produced a report and recommendation. The district court said that the FA Defendants failed "to identify the specific reasons why they object" to the magistrate judge's finding that the bankruptcy trustee waived Rockwell's arbitration rights. Aplt. App., Vol. IV at 1025. The district court then assumed what Rockwell might be arguing and rejected those arguments on the merits.

Third, the FA Defendants contend that the waiver failed to comply with the PSAs' requirement that modifications to the agreements be "made in writing and signed by the parties." *Id.*, Vol. I at 222. But the waiver of the arbitration clause was in a written letter signed by the parties. The bankruptcy trustee signed the letter on

22

behalf of Rockwell, and Plaintiffs' attorney signed on behalf of Plaintiffs. The FA Defendants assert, briefly and without citation to authority, that counsel for Plaintiffs lacked the authority to act on Plaintiffs' behalf in waiving the arbitration clause. But absent some impediment not apparent in the record, we cannot say that the lawyer was not authorized to act for his clients. The FA Defendants also suggest that the PSA required the waiver to state explicitly that it was modifying the agreement by waiving the arbitration clause. But even if there were such a requirement, the letter complied with it. The letter stated: "[T]o the extent that a modification of the PSA is required to be in writing, your signature below confirms this waiver and the deletion of the arbitration provision from each PSA." *Id.*, Vol. IV at 789.

Fourth, the FA Defendants argue that the Rockwell bankruptcy trustee could not waive the right to arbitrate without notice and a hearing under § 363 of the United States Bankruptcy Code. *See* 11 U.S.C. § 363(b)(1) ("The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."). But they provide no authority, nor are we aware of any, for the proposition that a right to demand arbitration of a dispute is "property of the estate" within the meaning of § 363.

Fifth, the FA Defendants contend that Rockwell could not waive the vested rights of third-party beneficiaries of the PSAs. This argument is foreclosed, however, by our above determination that the FA Defendants were not third-party beneficiaries with respect to the arbitration provision. *See supra* Part II.C.

23

### E. Equitable Estoppel

Finally, the FA Defendants claim that the court must order arbitration under the doctrine of equitable estoppel. They say that Florida and Ohio law both recognize two circumstances in which a nonsignatory may rely on this doctrine to enforce an arbitration agreement against someone who *had* signed the agreement[9]: (1) when the signatory relies on the contract containing the arbitration clause to assert a claim against the nonsignatory, and (2) when the signatory alleges collusive misconduct by the nonsignatory and a signatory. But their claim fails under either theory because equitable estoppel cannot be invoked to expand the scope of the arbitration clause in the PSAs.

Florida courts have recognized that "while equitable estoppel to some extent puts a non-signatory in a signatory's shoes, the doctrine does not expand the scope of disputes subject to arbitration." *Fla. Roads Trucking, LLC v. Zion Jacksonville, LLC*, 384 So. 3d 817, 820 (Fla. Dist. Ct. App. 2024) (internal quotation marks omitted). "Therefore, even when a non-signatory can rely on equitable estoppel to access the arbitration clause, the non-signatory can compel arbitration only if the dispute at issue falls within the scope of the arbitration clause." *Beck Auto Sales, Inc. v. Asbury Jax Ford, LLC*, 249 So. 3d 765, 768 (Fla. Dist. Ct. App. 2018) (brackets and internal quotation marks omitted). Similarly, Ohio courts have explained that although in

---

[9] Although one may question the application of equitable estoppel to take advantage of an arbitration clause that has been waived by the parties to the agreement, we need not explore that issue to resolve the claim before us.

some cases arbitration agreements may be enforced by nonsignatories, they "must not be so broadly construed as to encompass claims and parties that were not intended by the original contract." *I Sports v. IMG Worldwide*, 813 N.E.2d 4, 8 (Ohio Ct. App. 2004); *see West*, 867 N.E. 2d at 872 ("Because an agreement to arbitrate is a matter of contract, the agreement cannot be enforced when the dispute being litigated is not included in the arbitration clause.").

The arbitration clause that the FA Defendants seek to enforce against Plaintiffs applies only to "[a]ny dispute *between the parties*." Aplt. App., Vol. I at 221 (emphasis added). As previously discussed, the only "parties" to the PSAs were Rockwell and Plaintiffs. *See supra* Part II.B. Any dispute between Plaintiffs and the FA Defendants therefore falls outside the scope of the arbitration clause. Even if the FA Defendants could satisfy either of the asserted theories of equitable estoppel, this doctrine cannot expand the scope of the arbitration clause.

The cases under Florida law support this specific application of the rule. *See, e.g.*, *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1356–57 (11th Cir. 2017) (applying Florida law in holding that a nonsignatory could not compel arbitration under an equitable-estoppel theory where the arbitration clause provided only for arbitration of "disputes arising between" the contracting parties (internal quotation marks omitted)); *Calvert v. Surrency*, 395 So. 3d 705, 708 (Fla. Dist. Ct. App. 2024) (president and owner of corporate construction company could not compel homeowner to arbitrate under equitable estoppel because the arbitration clause in the builder contract agreement only "contemplate[d] disputes

25

between [the homeowner and the construction company] arising out of the agreement or transaction between them" (internal quotation marks omitted)); *Fla. Roads Trucking, LLC*, 384 So. 3d at 820 ("[E]ven if the [nonsignatory] Trucking Companies can invoke equitable estoppel, they cannot compel arbitration of [signatory] Zion's claims against them, because doing so would exceed the scope of the arbitration clause"; the provision provided for arbitration only of controversies between Zion and Archer Western or its surety, and "[t]he Trucking Companies are not Archer Western or its surety"); *Beck Auto Sales, Inc.*, 249 So. 3d at 768 (nonsignatory could not compel signatory to arbitrate under equitable-estoppel theory because arbitration provision was limited to "disputes between the parties" and the nonsignatory "was not a party to the arbitration agreement" (internal quotation marks omitted)).[10]

---

[10] The FA Defendants cite to *Kolsky v. Jackson Square, LLC*, 28 So. 3d 965 (Fla. Dist. Ct. App. 2010), in asserting that Florida courts "have allowed non-signatories to a contract to compel arbitration based on equitable estoppel under circumstances similar to those presented here." Aplt. Br. at 32. In that case the arbitration clause in an agreement was restricted to "disputes . . . between the Members." *Kolsky*, 28 So.3d at 969 (internal quotation marks omitted). The court applied the concerted-misconduct theory of equitable estoppel to permit nonsignatories to the agreement to invoke the arbitration clause. The opinion, however, focuses only on whether nonsignatories could invoke the clause and does not specifically address whether the clause could be invoked to permit arbitration of a dispute with a nonmember. Perhaps the nonmember issue was not raised by either party, since nothing in the opinion suggests that it was presented to the court. Indeed, in reviewing the caselaw citing *Kolsky*, we have not found any opinion interpreting that decision as rejecting the proposition that equitable estoppel cannot expand the scope of an arbitration clause limited to disputes between specific persons.

In any event, where, as here, the Florida Supreme Court "has not addressed the issue presented," our task is to predict "what decision the state court would make if faced with the same facts and issue." *Chavez v. Ariz. Auto. Ins. Co.*, 947 F.3d 642, 645 (10th Cir. 2020) (internal quotation marks omitted). And, unavoidably, "[w]hen a state's intermediate courts disagree among themselves, the federal court must reject

Ohio courts apparently have adopted the same approach. *Cf. Miller v. Cardinal Care Mgmt.*, No. 107730, 2019 WL 3046127, at *5, *7 (Ohio Ct. App. July 11, 2019) (nonsignatory heirs of deceased nursing-home resident could not be compelled to arbitrate under equitable estoppel because the arbitration clause in the agreement between decedent and nursing home "specifically limit[ed] arbitration to 'the Resident and Facility'" and "contain[ed] no language whatsoever that the agreement to arbitrate disputes applies to [the decedent's] heirs, beneficiaries, successors, and assigns"); *Ohio Dep't of Admin. Servs. v. Design Grp., Inc.*, No. 07AP-215, 2007 WL 4171131, at *3–4 (Ohio Ct. App. Nov. 27, 2007) (nonsignatories who were "not parties to the agreement" could not be compelled to arbitrate under equitable-estoppel doctrine because the arbitration provision expressly prohibited "any entity not a party to the contract from being included in arbitration without written consent").

This is not a case where the arbitration clause broadly covered any and all disputes arising out of the PSAs. *See, e.g.*, *Allied Pros. Ins. Co. v. Fitzpatrick*, 169 So. 3d 138, 139, 142 (Fla. Dist. Ct. App. 2015) (nonsignatories claiming rights under insurance policy could be compelled to arbitrate under equitable-estoppel doctrine where the arbitration clause in the policy covered "[a]ll disputes or claims . . . between the insurer and any person or entity who is not a party to the Policy but is

---

at least one opinion." Bryan A. Garner et al., *The Law of Judicial Precedent* 609 (2016). Here, we are satisfied that the more recent decisions from Florida's Courts of Appeal and the federal Eleventh Circuit (interpreting Florida law), overcome any concern that might arise from *Kolsky*.

claiming rights either under the Policy or against the insurer" (brackets and internal quotation marks omitted)); *Neal v. Navient Sols., LLC*, 978 F.3d 572, 577–78 (8th Cir. 2020) (applying Ohio law and concluding that nonsignatory could compel signatory to arbitrate under equitable estoppel where "the arbitration clause at issue clearly encompasse[d] disputes between [the signatory] and nonsignatory third parties," distinguishing the arbitration clause from the provision at issue in *Ohio Dep't of Admin. Servs.*, 2007 WL 4171131 at *3–4).

We conclude that the FA Defendants may not compel arbitration under the doctrine of equitable estoppel.

## III.   CONCLUSION

We **AFFIRM** the district court's order denying the FA Defendants' renewed motion to compel arbitration.